1　TIMOTHY CHEN SAULSBURY (CA SBN 281434)
　　TSaulsbury@mofo.com
2　JOYCE C. LI (CA SBN 323820)
　　JoyceLi@mofo.com
3　IAN A. BENNETT (CA SBN 346555)
　　IBennett@mofo.com
4　CLINTON W. EWELL (CA SBN 353961)
　　CEwell@mofo.com
5　MORRISON & FOERSTER LLP
　　425 Market Street,
6　San Francisco, California 94105-2482
　　Telephone:　　415.268.7000
7　Facsimile:　　415.268.7522

8　*Attorneys for Defendant*
　　HYPERDOC INC. d/b/a RECALL.AI

9

10　　　　　　　UNITED STATES DISTRICT COURT

11　　　　　　NORTHERN DISTRICT OF CALIFORNIA

12　　　　　　　　　SAN JOSE DIVISION

13

14　GONG.IO, INC.,　　　　　　　　　Case No. 5:25-cv-1026-NW

15　　　　　　Plaintiff,　　　　　　**NOTICE OF MOTION AND
　　　　　　　　　　　　　　　　　**DEFENDANT'S MOTION TO DISMISS**
16　　　　v.　　　　　　　　　　　**THE COMPLAINT PURSUANT TO 35
　　　　　　　　　　　　　　　　　U.S.C. § 101 AND FED. R. CIV. P.**
17　HYPERDOC INC. d/b/a RECALL.AI,　**12(B)(6); MEMORANDUM OF POINTS
　　　　　　　　　　　　　　　　　AND AUTHORITIES IN SUPPORT**
18　　　　　　Defendant.　　　　　　**THEREOF**

19　　　　　　　　　　　　　　　　Judge:　　Hon. Noël Wise
　　　　　　　　　　　　　　　　　Date:　　October 1, 2025
20　　　　　　　　　　　　　　　　Time:　　9:00 a.m.
　　　　　　　　　　　　　　　　　Dept.:　　Courtroom 3 – 5th Floor
21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2          PLEASE TAKE NOTICE that on October 1, 2025, at 9:00 a.m., in the courtroom of the

3   Honorable Noël Wise at the United States District Court for the Northern District of California,

4   280 South 1st Street, San Jose, CA 95113, Defendant Hyperdoc Inc. d/b/a Recall.ai ("Recall.ai")

5   shall and hereby does move the Court to dismiss Plaintiff's Complaint with prejudice, pursuant to

6   35 U.S.C. § 101 and the Federal Rule of Civil Procedure 12(b)(6).

7          This Motion is based on this Notice, the supporting Memorandum and Points of

8   Authorities, the supporting declaration of Joyce C. Li and accompanying exhibits, any reply

9   briefing and supporting declarations and exhibits in further support of this Motion, and any other

10  written or oral argument that Recall.ai may present to the Court in support of this Motion.

11

12  Dated: June 16, 2025                                   MORRISON & FOERSTER LLP

13

14                                                          By:  */s/ Timothy Chen Saulsbury*
                                                                 Timothy Chen Saulsbury
15

16                                                          *Attorney for Defendant*
                                                            HYPERDOC INC. D/B/A RECALL.AI
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND ......................................................... 2

    A.    The '409 Patent ........................................................................................ 2

    B.    Recall.ai's Accused Technology ............................................................. 2

III.   THE ASSERTED PATENT IS INELIGIBLE UNDER 35 U.S.C. § 101 .......... 3

    A.    Legal Standard ........................................................................................ 3

    B.    *Alice* Step One:  Claim 1 Is Directed to the Abstract Idea of Recording Virtual Conferences Using Virtual Participants ...................... 3

    C.    *Alice* Step Two:  Claim 1 Lacks an Inventive Concept ......................... 8

    D.    Claim 1 Is Representative of Unasserted Dependent Claims 2-12 ...... 10

IV.   GONG FAILS TO STATE A CLAIM OF INFRINGEMENT ....................... 11

    A.    Legal Standard ...................................................................................... 11

    B.    "Registering . . . By Emulating Human Interactions with a Graphical User Interface" Is a Critical Step in the Claimed Method ........................... 12

    C.    Gong Fails to Plausibly Allege That Recall.ai's Accused Technology Meets the "Registering" Step of the Claimed Method ........................... 13

V.    CONCLUSION ................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*
  838 F.3d 1253 (Fed. Cir. 2016)..........................................................................4, 5, 9

*ALD Soc., LLC v. Verkada, Inc.*,
  654 F. Supp. 3d 972 (N.D. Cal. 2023) .......................................................12, 15, 17

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)......................................................................................3, 4, 8, 9

*Atlas IP, LLC v. Exelon Corp.*,
  189 F. Supp. 3d 768 (N.D. Ill. 2016), *aff'd sub nom.*, 686 F. App'x 921 (Fed.
  Cir. 2017) ...................................................................................................................15

*Atlas IP LLC v. Pac. Gas & Elec. Co.*,
  No. 15-CV-05469-EDL, 2016 WL 1719545 (N.D. Cal. Mar. 9, 2016).................12

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021)..........................................................................11, 14

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017).................................................................................3

*Contiguity, LLC v. Conduent Bus. Servs., LLC*,
  No. W-23-CV-00038-XR, 2024 WL 252068 (W.D. Tex. Jan. 22, 2024).............16

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
  No. 5:20-CV-07273-EJD, 2024 WL 420747 (N.D. Cal. Feb. 5, 2024) ................12

*Credit Acceptance Corp. v. Westlake Servs.*,
  859 F.3d 1044 (Fed. Cir. 2017)...................................................................................7

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
  642 F. Supp. 3d 1034 (N.D. Cal. 2022) ..................................................................12

*e.Digital Corp. v. iBaby Labs, Inc.*,
  No. 15-CV-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016)................12

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)...................................................................................6

*Estech Sys. IP, LLC v. Zoom Video Commc'ns, Inc.*,
  No. 5:24-CV-02528-EJD, 2025 WL 834497 (N.D. Cal. Mar. 17, 2025) .............12

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) ........................................................................ 3

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ................................................................. *passim*

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ........................................................................ 6

*Lexos Media IP, LLC v. eBay Inc.*,
722 F. Supp. 3d 1042 (N.D. Cal. 2024) ..................................................... 10, 13

*Lifetime Indus., Inc. v. Trim-Lock, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017) ...................................................................... 11

*McRO, Inc. v. Bandai Namco Games America Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) .................................................................... 6, 7

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) .................................................................... 10

*Never-Search, Inc. v. Microsoft Corp.*,
No. 24-CV-03950-RFL, 2025 WL 943228 (N.D. Cal. Feb. 28, 2025) .................. 11

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) ......................................................................... 17

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ............................................................. 8, 9, 10

**Statutes and Other Authorities**

35 U.S.C. § 101 ............................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) .............................................. *passim*

1
## I.    INTRODUCTION

2          Gong alleges that Recall.ai infringes U.S. Patent No. 9,699,409 ("the "'409 patent").  The

3 '409 patent is about having a "virtual participant" join a virtual conference (such as a phone or

4 video conference) to record it.  The virtual participant is not a human, but computer software.  As

5 detailed below, Gong's Complaint should be dismissed in its entirety for two independent

6 reasons.

7          ***First***, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6)

8 because the only claim Gong specifically addresses in the Complaint (claim 1) is invalid under 35

9 U.S.C. § 101.  The claim merely implements the abstract idea of recording virtual conferences

10 with virtual participants using conventional computing tools, and thus is patent-ineligible under

11 § 101.  Indeed, the purported point of novelty of the claimed invention is that the virtual

12 participants are "register[ed] . . . with the conferencing system as co-participants in the virtual

13 conferences ***by emulating human interactions with a graphical user interface***"—which literally

14 describes using a computer to automate actions previously done by a human.  This quintessential

15 "do it on a computer" limitation is itself abstract and cannot make the claimed invention patent-

16 eligible.[1]

17          The abstractness of claim 1 is even more pronounced under the broad reading of claim 1

18 that Gong must adopt to assert infringement, which essentially reads out the "registering . . . ***by***

19 ***emulating human interactions with a graphical user interface***" limitation.  Not only is that

20 limitation the alleged point of novelty of the claim, but it is the only language in the claim that

21 even begins to describe how the abstract idea is implemented.  Because Recall.ai's technology

22 works in a fundamentally different way, Gong has been forced to rely on an interpretation of

23 claim 1 that is so broad that it renders the "emulating" limitation meaningless.  Gong's

24 infringement allegations thus firmly establish that claim 1 (and the claims that depend from it) are

25 patent-ineligible under § 101.

26          ***Second***, Gong fails to state a claim of infringement under Rule 12(b)(6), because its

27 Complaint demonstrates that the accused technology does not register virtual participants with

28

---

[1] Emphasis added throughout unless otherwise noted.

conferences by "emulating human interactions with a graphical user interface."  Gong's

infringement claim rests on an interpretation of "emulating human interactions with a graphical

user interface" that is so broad as to encompass use of an ***application programming*** interface—an

interface that a human never interacts with and has no graphical component whatsoever.  That is a

facially implausible interpretation of the claim language, which cannot save Gong's claims from

dismissal.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The '409 Patent

The '409 patent describes systems and methods for recording web conferences.  Dkt. 1,

Ex. A ('409 patent).  The Complaint addresses only claim 1, which reads:

> 1. A method of conference recording, comprising the steps of:
>
> identifying a plurality of virtual conferences being operated by a
> conferencing system connected to a communications network, the
> virtual conferences having human participants;
>
> executing a plurality of virtual participant processes in a processor;
>
> ***registering the virtual participant processes with the conferencing
> system as co-participants in the virtual conferences by emulating
> human interactions with a graphical user interface***; and
>
> recording information streams of the human participants using the
> virtual participant processes.

'409 patent, claim 1.  Notably, and as discussed further below, claim 1 requires the virtual

participant processes to "register[] . . . with the conferencing system as co-participants" (i.e., join

the conference) "by emulating human interactions with a graphical user interface."

### B.    Recall.ai's Accused Technology

Recall.ai offers an application programming interface ("API").  As Gong states in the

Joint Initial Case Management Statement, "an API allows one program to request that another

perform a certain action without needing details on how that will be accomplished."  Dkt. 24 at 2

n.1.  Recall.ai's API allows software developers to create software that makes requests to various

videoconferencing platforms (among other things).

1    **III.    THE ASSERTED PATENT IS INELIGIBLE UNDER 35 U.S.C. § 101**

2          The Complaint should be dismissed because claim 1 (the only claim addressed in the

3    Complaint) is patent-ineligible under § 101 for claiming an unpatentable abstract idea.  In

4    addition, because claim 1 is representative of its unasserted dependent claims 2-12, those claims

5    are patent-ineligible for the same reasons as claim 1.

6          **A.    Legal Standard**

7          The Supreme Court has articulated a two-step test for examining patent eligibility under

8    § 101.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).  "Under this '*Alice*' test, a

9    claim falls outside § 101 if (1) it is directed to a patent-ineligible concept like an abstract idea,

10   and (2) it lacks elements sufficient to transform the claim into a patent-eligible application."

11   *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023).  "Patent

12   eligibility may be resolved on a Rule 12(b)(6) motion where the undisputed facts, considered

13   under the standards required by that Rule, require a holding of ineligibility under the substantive

14   standards of law."  *Hawk Technology*, 60 F.4th at 1356 (cleaned up).  Indeed, the Federal Circuit

15   has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim

16   construction or significant discovery has commenced."  *Cleveland Clinic Found. v. True Health

17   Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017); *see also Genetic Techs. Ltd. v. Merial

18   L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016) ("We have repeatedly recognized that in many

19   cases it is possible and proper to determine patent-eligibility under 35 U.S.C. § 101 on a Rule

20   12(b)(6) motion.").

21          **B.    *Alice* Step One:  Claim 1 Is Directed to the Abstract Idea of Recording
22                 Virtual Conferences Using Virtual Participants**

23          Claim 1 of the '409 patent describes a method of recording virtual conferences using

24   "virtual participant processes."  The claim describes the steps of the method in broad functional

25   terms:  "identifying a plurality of virtual conferences . . . ;" "executing a plurality of virtual

26   participant processes . . . ;" "registering the virtual participant processes with the conferencing

27   system…by emulating human interactions with a graphical user interface;" and "recording the

28   information streams of the human participants using the virtual participant processes."  As the

'409 patent specification acknowledges, the virtual participant of the claimed method is simply

doing tasks that have long been done by humans:

> A virtual participant emulates a human attendee, logging into a
> meeting supported by a conventional videoconferencing program.
> The virtual participant is tasked with listening, storing, aggregating
> and organizing a stream [of] multimedia data that is presented by
> the participants during the virtual conference.

'409 patent at 1:46-51.  In other words, the virtual participant automates the tasks traditionally

done by a human participant—joining a meeting and recording the information presented at the

meeting.  This is a quintessential "do it on a computer" claim, which courts have repeatedly found

directed to an abstract idea under step one of the *Alice* test.

For example, in *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, the Federal Circuit found

the asserted patent claim directed to the abstract idea of "providing out-of-region access to

regional broadcast content."  838 F.3d 1253, 1258 (Fed. Cir. 2016).  The Court found that humans

had long engaged in the practice of conveying regional content to out-of-region recipients and

that practice could "be implemented in myriad ways ranging from the low-tech, such as by

mailing copies of a local newspaper to an out-of-state subscriber, to the high-tech, such as by

using satellites to disseminate broadcasts of sporting events."  *Id.*  Although the asserted claim

refers to components such as "a cellular phone, a graphical user interface, and a downloadable

application, the claimed invention is entirely functional in nature."  *Id.*  "There is nothing in [the

asserted claim] that is directed to *how* to implement out-of-region broadcasting on a cellular

telephone.  Rather, the claim is drawn to the idea itself."  *Id.*  Moreover, the Court held that the

claim was not any less abstract because it required the content to be delivered to cellphones,

because that limitation merely "confine[s] the abstract idea to a particular technological

environment—in [that] case, cellular telephones."  *Id.* at 1258-59.

As another example, in *Hawk Technology*, the Federal Circuit found claims "directed to a

method of receiving, displaying, converting, storing, and transmitting digital video 'using

result-based functional language'" are directed to the abstract idea of storing and displaying

video.  60 F.4th at 1356-57 (citation omitted).  The Court rejected the patentee's argument that

the claims were instead directed to a solution to a technical problem ("conserving bandwidth

1    while preserving data"), because the claims do not explain how the alleged solution is achieved.

2    *Id.* at 1357-58.

3          Claim 1 of the '409 patent is analogous to the claims at issue in *Affinity Labs* and *Hawk*

4    *Technology*.  Claim 1 is directed to the abstract idea of recording virtual conferences using virtual

5    participants.  Like providing out-of-region access to regional broadcast content, humans have

6    long engaged in the practice of recording virtual conferences (e.g., phone or video conferences),

7    and that practice can be implemented in myriad ways—ranging from low tech (e.g., taking down

8    notes with a pen and paper) to high-tech (e.g., using recording software to record the participants'

9    video and audio streams).  *See Affinity Labs*, 838 F.3d at 1258.  That the claim requires the

10   recording to be done by "virtual participant processes" does not make the claim any less abstract:

11   like the requirement in *Affinity Labs* that content be delivered to cellphones, requiring the

12   recording to be done by virtual participant processes merely confines the abstract idea to a

13   particular technological environment—in this case, virtual machines.[2]  *See id.*

14         Moreover, like the claims in *Affinity Labs* and *Hawk Technology*, claim 1 is written in

15   functional language and does not explain ***how*** the videoconference is recorded using virtual

16   participants.  *See id.*; *Hawk Technology*, 60 F.4th at 1357-58.  Nor does the claim explain how to

17   go about "identifying a plurality of virtual conferences," "executing a plurality of virtual

18   participant processes," or "recording information streams of the human participants using the

19   virtual participant processes."  '409 patent, claim 1.  Although the claim states that the virtual

20   participant processes are "register[ed] . . . with the conferencing system . . . by emulating human

21   interactions with a graphical user interface," it does not explain how such "emulating" is done.

22   *Id.*  The claimed invention thus boils down to:  use a computer program to record virtual

23   conferences by having the computer program join the virtual conferences like a human—"a mere

24   implementation of an abstract idea."  *See Hawk Technology*, 60 F.4th at 1358.

25

26   _____

27   [2] The '409 specification explains that "executing a virtual participant process is accomplished by
     spawning a virtual machine in the processor and executing the virtual participant process in the
     virtual machine."  '409 patent at 1:66-2:2.  As this section of the specification makes clear, a

28   "virtual participant process" is simply a computer program that is run (executed) in a particular
     computing environment (a virtual machine).

1       Claim 1 of the '409 patent is thus clearly distinguishable from claims that have been found

2   directed to "a specific improvement to the ways computers operate." *Enfish, LLC v. Microsoft*

3   *Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). The Federal Circuit has found software inventions

4   to be patent-eligible "where they have made non-abstract improvements to existing technological

5   processes and computer technology." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d

6   1143, 1150 (Fed. Cir. 2019) (collecting cases). For example, in *Koninklijke*, the court found the

7   claims at issue directed to "a non-abstract improvement in an existing technological process (i.e.,

8   error checking in data transmissions)." *Id.* at 1150. The court noted that, "[i]mportantly, the

9   claims do not simply recite, without more, the mere desired result of catching previously

10  undetectable systematic errors, but rather ***recite a specific solution for accomplishing that goal***—

11  i.e., by varying the way check data is generated by modifying the permutation applied to different

12  data blocks." *Id.* at 1151.

13      Similarly, in *McRO, Inc. v. Bandai Namco Games America Inc.*, the Court found the

14  asserted claims directed to "a specific asserted improvement in computer animation, i.e., the

15  automatic use of rules of a particular type." 837 F.3d 1299, 1314 (Fed. Cir. 2016). The claimed

16  invention in *McRO* did not simply automate the process previously performed by human

17  animators—because that process did not "evaluate sub-sequences, generate transition parameters

18  or apply transition parameters to create a final morph weight set" as required by the claimed rules.

19  *Id.* The court thus concluded that "[i]t is the incorporation of the claimed rules, not the use of the

20  computer, that improved the existing technological process by allowing the automation of further

21  tasks." *Id.* (citation omitted).

22      Claim 1 of the '409 patent does not recite a specific solution that improves computer

23  technology. Unlike the claim in *Koninklijke*, claim 1 of the '409 patent simply recites the desired

24  result—using computer programs (virtual participant processes) to record virtual conferences—

25  without reciting a specific solution for accomplishing that goal. *See Koninklijke*, 942 F.3d at

26  1150-51. As discussed above, the claim is written in functional language and does not explain

27  ***how*** the virtual participant processes are used to record the conference. Indeed, the only

28  limitation in the claim that provides any information about how the claim step is performed—

1    "registering . . . by emulating human interactions with a graphical user interface"—simply

2    describes using a computer to automate what was previously done by humans.  A human registers

3    for a virtual conference by interacting with a graphical user interface—e.g., by clicking the "Join

4    Meeting" button to join a Zoom meeting.  The "emulating" claim limitation literally requires

5    using a computer to perform the same actions.  The Federal Circuit makes clear that such

6    requirements do not render a claim patentable, because "mere automation of manual processes

7    using generic computers does not constitute a patentable improvement in computer technology."

8    *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) (finding claims

9    directed to the abstract idea of processing an application for financing a purchase and analogous

10    to prior cases where "the focus of the claims is not on such an ***improvement in computers as***

11    ***tools***, but on certain independently abstract ideas that ***use computers as tools***" (citation omitted)).

12        Claim 1 of the '409 patent is also clearly distinguishable from the claim addressed in

13    *McRO*.  Whereas the claim in *McRO* described a process that was different from and improved

14    upon the process previously used by human animators—by setting forth specific rules for what

15    parameters to use and how those parameters are applied—claim 1 of the '409 patent exactly

16    mirrors the process that a human would use to record a virtual conference.  *See McRO*, 837 F.3d

17    at 1314.  The claim simply swaps the human participant for a computer program (a "virtual

18    participant process").  The computer program even joins the virtual conference in the same

19    manner as a human participant ("by emulating human interactions with a graphical user

20    interface").  Claim 1 thus raises the preemption concerns central to § 101 that the claim in *McRO*

21    avoids.  *Id.* at 1314 ("The preemption concern arises when the claims are not directed to a specific

22    invention and instead improperly monopolize 'the basic tools of scientific and technological

23    work.'") (citation omitted).  In *McRO*, "[t]he specific structure of the claimed rules would prevent

24    broad preemption of all rules-based means of automating lip synchronization."  *Id.* at 1315.  The

25    same cannot be said for claim 1 of the '409 patent—which would broadly preempt all means of

26    recording virtual conferences using virtual participants that join meetings like humans.

27        The preemption concern is even greater in view of Gong's expansive reading of claim 1

28    for infringement, which effectively eliminates the only limitation with any detail about how a step

is performed: "registering the virtual participant processes with the conferencing system…***by***

***emulating human interactions with a graphical user interface***." '409 patent, claim 1.  As

detailed in Section IV below, the Complaint makes clear that Recall.ai's accused technology does

not cause virtual participants to join virtual conferences "by emulating human interactions with a

***graphical user*** interface"—but instead does so by using an ***application programming*** interface

(API).  *See infra* Section IV; Dkt. 1 ¶¶ 25, 41.  The Complaint further establishes that an API is

an interface that no human interacts with and that has no graphical component, because it is

meant to be used by a computer program.  *See infra* Section IV; Dkt. 1 ¶¶ 21-22.  Yet, to plead

infringement, Gong reads "emulating human interactions with a graphical user interface" broadly

enough to encompass use of an API.  Not only is this interpretation facially implausible (*see infra*

Section IV), the effective result of Gong's interpretation is to eliminate the "emulating" limitation

entirely.  If "***human*** interactions with a ***graphical user*** interface" can be "emulated" by

machine-to-machine computer operations that ***cannot*** be performed by a human and involve ***no***

interaction with any graphical component, the limitation is so broad as to be rendered

meaningless.  The scope of claim 1 would then expand to cover the abstract idea entirely—

preempting all approaches to recording virtual conferences using virtual participants.  Such a

claim is clearly directed to an abstract idea under *Alice* step one.

## C.    *Alice* Step Two:  Claim 1 Lacks an Inventive Concept

Under *Alice* step two, the court considers the claim elements—individually and as an

ordered combination—to assess whether they transform the nature of the claim into a patent

eligible application of the abstract idea.  *Hawk Technology*, 60 F.4th at 1358.  "Merely reciting

the use of a generic computer or adding the words 'apply it with a computer' cannot convert a

patent-ineligible abstract idea into a patent-eligible invention."  *Two-Way Media Ltd. v. Comcast

Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017).

Nothing in claim 1 of the '409 patent converts the abstract idea (recording virtual

conferences with virtual participants) into a patent-eligible invention.  The components recited in

the claim—"virtual conferences being operated by a conferencing system connected to a

communications network," "virtual participant processes" that are executed "in a processor," and

1  a "graphical user interface"—are generic computing components. The specification confirms

2  this. The specification states that "the inventive system is operable, mutatis mutandis, with many

3  ***conventional web conferencing software products***," and "[t]he term 'network' is intended to

4  represent any of a variety of ***conventional network topologies and types*** . . . , employing any of a

5  variety of ***conventional network protocols***." '409 patent at 4:43-47, 5:39-40. The specification

6  also explains that the claimed system "typically comprises one or multiple interconnected ***general***

7  ***purpose or embedded computer processors*** in one or multiple computers, which are programmed

8  with suitable software for carrying out the functions described hereinbelow." *Id.* at 4:59-63.

9  Indeed, the specification expressly states that "well-known circuits, control logic, and the details

10 of computer program instructions for conventional algorithms and processes have not been shown

11 in detail in order not to obscure the general concepts unnecessarily." *Id.* at 4:4-7. In other words,

12 the specification purposely omits implementation details for the computing components used in

13 the claimed invention because they are so well known and conventional. Such generic computing

14 components cannot provide an inventive concept under *Alice* step two. *See Affinity Labs*,

15 838 F.3d at 1265 (limitations describing "purely conventional features of cellular telephones and

16 the applications that enable them to perform particular functions" did not supply an inventive

17 concept); *Hawk Technology*, 60 F.4th at 1358-59 (no inventive concept from claim limitations

18 that only required "'off-the-shelf, conventional computer, network, and display technology for

19 gathering, sending, and presenting the desired information'" (citation omitted)); *Two-Way Media*,

20 874 F.3d at 1339 (no inventive concept from claim limitations that only required "conventional

21 computer and network components operating according to their ordinary functions").

22        Nor is there any inventive concept in the ordered combination of the elements in claim 1

23 of the '409 patent. The '409 patent specification acknowledges that recording virtual conferences

24 was well known and conventional in the prior art. In the "Background of the Invention" section,

25 the specification explains that "[t]he need to document virtual meetings has been recognized" and

26 incorporates by reference U.S. Patent Application Publication No. 2015/0244749 ("the "'749

27 Application") as an example of existing technology. The '749 Application states that

28 "***[c]onventional*** solutions enable users to record audio or video from the meeting." Declaration

of Joyce C. Li Submitted Herewith ("Li Decl."), Ex. 1 ¶ 5.[3]  Moreover, during prosecution, the

examiner identified prior art that specifically taught using a virtual participant to record virtual

meetings.  Ex. 2 (Jan. 23, 2017 Non-Final Rejection) at 2 (the prior art discloses "video sessions

and video chats, where during a video session, the audio from a sender is recorded and stored,"

and that "an additional ***virtual participant is connected that would listen and record*** what the

other participants in audio sessions in a server").  Claim 1 of the '409 patent thus follows the

expected and conventional ordering of steps to record virtual conferences with virtual

participants—first identifying virtual conferences, then creating virtual participants, then

registering the virtual participants with the conferences and recording them.  There is no inventive

concept in that ordering sufficient to make the claim patent-eligible.  *See Two-Way Media*, 874

F.3d at 1339 (no inventive concept in the ordered combination of the claim elements where "[t]he

claim uses a conventional ordering of steps—first processing the data, then routing it, controlling

it, and monitoring its reception—with conventional technology to achieve its desired result.").

Rather, the claim "merely recit[es] an abstract idea performed on a set of generic computer

components."  *Id.*; *see also Hawk Technology*, 60 F.4th at 1359 (finding no inventive concept in

the ordered combination of the claim elements).

    Because claim 1 (the only claim asserted in the Complaint) is directed to an abstract idea

and lacks an inventive concept sufficient to transform the claim into a patent-eligible invention,

the claim is ineligible under § 101.  Gong's Complaint should thus be dismissed in its entirety.

### D.    Claim 1 Is Representative of Unasserted Dependent Claims 2-12

    A claim may be considered representative of a group of claims for purposes of assessing

eligibility under § 101 if the group of claims are "'substantially similar and linked to the same'

ineligible concept."  *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024)

(citation omitted).  Claim 1 is representative of its unasserted claims 2-12.  Claims 2-12 depend

from claim 1 and are directed to the same abstract concept—recording virtual conferences with

---

[3] The Court may take judicial notice of the '749 Application and the prosecution history of the
'409 Patent (Li Decl., Exs. 1-4) because they are documents issued by the U.S. Patent and
Trademark Office and thus a public record.  *Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d
1042, 1049 (N.D. Cal. 2024) ("Courts may . . . take judicial notice of documents issued by the
PTO, including a patent's prosecution history.")

virtual participants.  Claims 2-12 simply recite additional functionality associated with the virtual

participant processes and conferencing system using conventional computing components.

Claims 2 and 11 add additional limitations regarding how the virtual participant processes are

executed and registered.  Claims 3-6 add a "recording component process" that "is cooperative

with" the virtual participant processes and describe additional functionality provided by the

recording component.  Claims 7-9 and 12 describe additional functionality provided by the virtual

participant processes.  Claim 10 recites additional functionality provided by the conferencing

system.  Claim 1 is thus representative of claims 2-12 and those claims are invalid under § 101 for

the same reasons as claim 1.  *See Never-Search, Inc. v. Microsoft Corp.*, No. 24-CV-03950-RFL,

2025 WL 943228, at *1-2 (N.D. Cal. Feb. 28, 2025) (finding a claim representative of its

dependent claims where they "merely tack on generic computer components or introduce

conventional computer activities," and finding another claim representative of its dependent

claims where they "simply recite additional limitations about receiving and displaying

information").

## IV.    GONG FAILS TO STATE A CLAIM OF INFRINGEMENT

The Complaint should be dismissed for a second, independent reason:  Gong has failed to

state a plausible claim of infringement under Rule 12(b)(6).

### A.    Legal Standard

To survive a Rule 12(b)(6) motion, a complaint for patent infringement must "place the

alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime

Indus., Inc. v. Trim-Lock, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (alteration in original)

(quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir.

2013)).  "[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly*

standard by reciting the claim elements and merely concluding that the accused product has those

elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  Rather,

"[t]here must be some factual allegations that, when taken as true, articulate why it is plausible

that the accused product infringes the patent claim." *Id.*  In accordance with the Federal Circuit's

approach in *Bot M8*, this District Court has first "identif[ied] the critical elements of each of the

1  Asserted Patents and then determin[ed] whether [the plaintiff] has provided specific factual

2  allegations to meet those claim elements, placing [the defendant] on notice of what activity is

3  being accused of infringement."  *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d

4  1034, 1042 (N.D. Cal. 2022).  Courts in this District routinely dismiss claims for patent

5  infringement for failing to meet the *Iqbal/Twombly* pleading standard.  *See, e.g.*, *Coop. Ent., Inc.*

6  *v. Kollective Tech., Inc.*, No. 5:20-CV-07273-EJD, 2024 WL 420747, at *5 (N.D. Cal. Feb. 5,

7  2024); *Estech Sys. IP, LLC v. Zoom Video Commc'ns, Inc.*, No. 5:24-CV-02528-EJD, 2025 WL

8  834497, at *6 (N.D. Cal. Mar. 17, 2025); *ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972,

9  978 (N.D. Cal. 2023); *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-CV-05790-JST, 2016 WL

10  4427209, at *5 (N.D. Cal. Aug. 22, 2016); *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-CV-

11  05469-EDL, 2016 WL 1719545, at *5 (N.D. Cal. Mar. 9, 2016).

       **B.**       **"Registering . . . By Emulating Human Interactions with a Graphical User Interface" Is a Critical Step in the Claimed Method**

14         Claim 1 of the '409 patent (the only claim addressed in the Complaint) describes a method

15  of recording virtual conferences using "virtual participant processes."  Virtual participant

16  processes are not real human participants, but software programs running on a computer.  *See,*

17  *e.g.*, '409 patent at 7:45-47 ("[I]n order to initiate the virtual participant 30 (FIG. 1) a virtual

18  machine is spawned and typically executes on a server that is accessible via the Internet.").

19  Claim 1 expressly requires "registering the virtual participant processes with the conferencing

20  system as co-participants in the virtual conferences ***by emulating human interactions with a***

21  ***graphical user interface***."  *Id.*, claim 1.  The '409 patent specification explains that this step

22  obviated the need to tailor the recording software to the distinct registration mechanisms of

23  different videoconference platforms (e.g., Zoom, Microsoft Teams, Google Meet, or Slack

24  Huddles).  That is because the recording software "interacts with the same user interface of the

25  conferencing software 28 as a human user" and thus is "interoperable with versions of

26  conferencing software produced by many vendors."  *Id.* at 6:67-7:4.  Indeed, when implementing

27  the claimed method, "[t]he conferencing software 28 might be unaware that the virtual participant

28  30 is an automated computer process rather than a transmitter of human-initiated actions."  *Id.* at

7:4-7.  The requirement that the virtual participant processes register with the conferencing system "by emulating human interactions with a graphical user interface" is thus critical to the alleged point of novelty of the claimed invention.

This is confirmed by the prosecution history of the '409 patent, which is a public record subject to judicial notice and properly considered in resolving a Rule 12(b)(6) motion.  *Lexos Media*, 722 F. Supp. 3d at 1049.  During prosecution, the applicant sought a claim that simply required "registering the virtual participant process with the conferencing system as a co-participant in the virtual conference" without any limitation on how that registration is done.  Li Decl., Ex. 3 (Sept. 25, 2016 Specification and Claims) at 21 (claim 1).  The Patent Office rejected that claim as invalid over the prior art.  *Id.*, Ex. 2 (Jan. 23, 2017 Non-Final Rejection) at 2 (rejecting claim 1).  In response, the applicant amended the claim to require the registration to be done "by emulating human interactions with a graphical user interface." *Id.*, Ex. 4 (Feb. 8, 2017 Amendment) at 2, 7 (amending claim 1).  The applicant thus acknowledged, consistent with the teachings of the '409 patent specification, that registering the virtual participant with the conferencing system "by emulating human interactions with a graphical user interface" is critical to the purported novelty of the claimed invention.

### C.    Gong Fails to Plausibly Allege That Recall.ai's Accused Technology Meets the "Registering" Step of the Claimed Method

Gong alleges infringement of claim 1 based on use of Recall.ai's API.  Dkt. 1 ¶¶ 33-35.  As detailed below, Gong's infringement claims must be dismissed because the factual allegations in the Complaint do not support a plausible inference that Recall.ai's API allows users to practice a critical element of claim 1—"registering the virtual participant processes with the conferencing system…*by emulating human interactions with a graphical user interface*."

Gong's only statement in the Complaint that directly addresses this claim element is a conclusory assertion:  "Because the video conferencing software is designed for humans to access and use by means of a graphical user interface, Recall.ai's bots must emulate human interactions

1  with a graphical user interface in order to join the video conference."[4]  Not only does Gong

2  provide no factual allegations to support that assertion (which alone requires dismissal, *see Bot*

3  *M8*, 4 F.4th at 1354), the citations to Recall.ai's documentation show that it is false.

4        In both the Complaint and the attached claim chart (Ex. B), Gong includes the following

5  excerpt from Recall.ai's website regarding the Zoom platform:

```
Now that your Zoom credentials are configured in the Recall dashboard, you can send a bot to a
Zoom meeting by calling Create Bot.

cURL

curl --request POST \
    --url https://us-east-1.recall.ai/api/v1/bot/ \
    --header 'Authorization: Token {RECALL_API_KEY}' \
    --header 'accept: application/json' \
    --header 'content-type: application/json' \
    --data '
{
  "meeting_url": {MEETING_URL},
  "bot_name": "My First Zoom Bot"
}
'

Wait a few moments and the bot will join the call.
```

17  Dkt. 1 ¶ 41, *id.*, Ex. B at 46.  This excerpt makes clear that Recall.ai causes a bot to join a Zoom

18  meeting "by calling <u>Create Bot</u>."  "Create Bot" is an API endpoint, which is a specific URL that

19  can receive requests from a computer program.  That is clear from the example request above,

20  which is sent to the "url https://us-east-1.recall.ai/api/v1/bot/."  *See also id.* at 43 (citing another

21  portion of Recall.ai's website that states, "With this option the ***API*** consumers can use the

22  existing ***Create Bot*** & <u>Delete Bot</u> ***endpoints***….").

23        It is important that Recall.ai causes bots to join meetings by sending a request to an API

24  endpoint (Create Bot) because such requests cannot be made by a human and do not involve any

25  "graphical user interface."  Interacting with an API thus cannot be "emulating ***human*** interactions

26  ***with a graphical user interface***"—as required by claim 1 of the '409 patent.  This is clear from

---

27  [4] Although Gong includes excerpts from Recall.ai's website, all except the Zoom excerpt

28  discussed below simply stand for the proposition that Recall.ai causes bots to join web
   conferences—and say nothing about how that is done.  *See* Dkt. 1 ¶ 41, *id.*, Ex. B at 45-47.

1    Gong's own allegations in the Complaint, which acknowledge the difference between a

2    "graphical user interface" and an "application programming interface" (API):

3
4              Just as a human might interact with a piece of software using its
               *graphical user* interface (***e.g., by opening the File menu and***
4              ***selecting Save***) Recall.ai's *application programming* interface
5              allows a computer program to interact with and invoke Recall.ai's
               software and services (***e.g., by sending a request containing***
6              ***specific pieces of information over the World Wide Web to a***
               ***specific Recall.ai URL*** in order to tell a Recall.ai bot to join a
7              specific online meeting.

8    Dkt. 1 ¶ 22.  Whereas a graphical user interface involves visual indicators—such as a "File menu"

9    or "Save" button—an application programming interface (API) does not.  And that makes sense

10   because, as Gong acknowledges, a graphical user interface is meant to be used by a human,

11   whereas an API is meant to be used by a computer program.

12          Gong's infringement theory appears to be that interacting with an API ***is*** "emulating

13   human interactions with a graphical user interface."  *See* Dkt. 24 at 3 (asserting that "the '409

14   patent specifically discloses other techniques for 'emulating human interactions with a graphical

15   user interface' that include… 'join[ing] conferences as a *machine* would (via an application

16   programming interface or by executing a function)").  That is an implausible interpretation of the

17   claim language and cannot preclude dismissal.  *ALD*, 654 F. Supp. 3d at 979 ("[T]he Court may

18   dismiss a complaint prior to claim construction when the complaint rests on an implausible claim

19   construction.") (citing *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018)).  In *ALD*,

20   the asserted claim required counting the number of "wireless devices" in a camera frame, but the

21   accused product instead counted the number of people.  *Id.*  The Court dismissed the infringement

22   claim on the grounds that "Plaintiff's implausible construction—construing people as wireless

23   devices—fails to state a claim for literal infringement."  *Id.*  The same reasoning applies in this

24   case:  Gong cannot state a claim for infringement by interpreting "emulating human interactions

25   with a graphical user interface" to mean interaction with an API—an interface that has no

26   "graphical" component and that a human cannot interact with.  *See also Atlas IP, LLC v. Exelon*

27   *Corp.*, 189 F. Supp. 3d 768, 778 (N.D. Ill. 2016), *aff'd sub nom.*, 686 F. App'x 921 (Fed. Cir.

28   2017) (dismissing an infringement claim that depended on construing limitations that required

1    controlling a plurality of "remotes" to cover accused products that are incapable of controlling

2    multiple remotes); *Contiguity, LLC v. Conduent Bus. Servs., LLC*, No. W-23-CV-00038-XR,

3    2024 WL 252068, at *3 (W.D. Tex. Jan. 22, 2024) (dismissing an infringement claim that

4    depended on construing limitations requiring imagery to be collected "at a first location" and "a

5    second location" to be met by images collected at a single location)

6         The '409 patent specification confirms the implausibility of Gong's interpretation.  The

7    specification makes clear that "emulating human interactions with a graphical user interface"

8    means emulating the actions that are "conventionally performed by human participants."  *See*

9    '409 patent at 5:43-47 ("One component of the system 34 is a process referred to as a virtual

10   participant 30, ***which emulates certain actions with respect to the conference that are***

11   ***conventionally performed by human participants***").  The specification also makes clear that the

12   "graphical user interface" is the visual interface that is presented to a human participant.  *See id.*

13   at 7:53-59 ("The recorder component may be provided with pattern recognition facilities and

14   other known artificial intelligence programs ***in order to automate manipulation of the graphical***

15   ***user interface*** and the conferencing software 28 or to record and interpret selected portions of ***the***

16   ***windows displayed by the graphical user interface***.")  Consistent with that, the specification

17   explains that "[t]o join the conference, the recorder component 32 ***emulates a set of mouse clicks,***

18   ***key strokes, and other actions that mimic a human participant joining a virtual conference***"

19   and "interacts with the ***same user interface of the conferencing software 28 as a human user***."

20   *Id.* at 6:65-7:4.

21        Nothing in the specification suggests that interacting with an API could be "emulating

22   human interactions with a graphical user interface."  Gong cites to three sections of the

23   specification in the Joint Initial Case Management Conference.  Dkt. 24 at 3 (citing '409 patent at

24   5:60-65, 11:15-18, and 11:10-14).  None of those sections supports its construction.  The first two

25   sections refer to an "application programing interface" but not specific to how a virtual

26   participant ***registers*** with the conferencing system.  The fact that other processes not related to

27   "registering" the virtual participant rely on APIs does not mean that interacting with an API is

28   "emulating human interactions with a graphical user interface."  Claim 1 only imposes the

"emulating" limitation with respect to the "registering" step and does not otherwise foreclose other types of interaction (such as interaction with an API). The third cited section of the specification does not refer to APIs at all, and, regardless, expressly states that it is describing "alternate embodiments" to "using keyboard and mouse emulation." *Id.* at 11:10-14.

In sum, Gong's only factual allegations regarding how Recall.ai allegedly registers bots with a conferencing system establishes that Recall.ai does so by interacting with an API, which is an interface that has no "graphical" component and that a human cannot interact with. Gong's only infringement theory thus relies on an implausible interpretation of the claim—interpreting "emulating human interactions with a graphical user interface" to mean interaction with an API—and fails to state a claim of infringement under Rule 12(b)(6). *See ALD*, 654 F. Supp. 3d at 979. The Complaint should therefore be dismissed in its entirety.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Gong's Complaint in its entirety. Because each of the grounds for dismissal is a fundamental deficiency that cannot be cured, the Complaint should be dismissed with prejudice. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile.").

Dated: June 16, 2025

MORRISON & FOERSTER LLP

By: */s/ Timothy Chen Saulsbury*
Timothy Chen Saulsbury

*Attorney for Defendant*
HYPERDOC INC. D/B/A RECALL.AI