1  CLEMENT SETH ROBERTS (SBN 209203)
   croberts@orrick.com
2  RAGHAV KRISHNAPRIYAN (SBN 273411)
   rkrishnapriyan@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
4  405 Howard Street
   San Francisco, CA 94105-2669
5  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
6
   GERALD E. PORTER (SBN 344396)
7  gporter@orrick.com
   ORRICK, HERRINGTON & SUTCLIFFE LLP
8  120 Broadway, 4th Floor
   Santa Monica, CA 90401
9  Telephone:    +1 310 633 2800

10 *Attorneys for Plaintiff* GONG.IO, INC.

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                       SAN JOSE DIVISION

15

16 GONG.IO, INC.,                        Case No. 5:25-cv-01026-NW

17              Plaintiff,                **GONG.IO, INC.'S OPPOSITION TO**
                                          **DEFENDANT HYPERDOC INC. d/b/a**
18      *v.*                             **RECALL.AI'S RENEWED MOTION**
                                          **TO DISMISS THE AMENDED**
19 HYPERDOC INC. d/b/a RECALL.AI,        **COMPLAINT**

20              Defendant.               Date:        October 1, 2025
21                                       Time:        9:00 a.m.
                                         Ctrm:        3
22                                       Judge:       Hon. Noël Wise

23                                       Complaint filed: January 31, 2025
                                         Trial Date: November 30, 2026
24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

      A.    Gong's Innovative Virtual Conference Recording Technology ............................ 2

      B.    The '409 Patent ........................................................................................... 2

      C.    Problems with Prior Recording Methods ................................................................. 2

      D.    Gong's Technical Solution.................................................................................... 4

III.  LEGAL STANDARD ......................................................................................... 5

IV.   ARGUMENT ..................................................................................................... 6

      A.    *Alice* Step One: The Claims Are Not Directed to an Abstract Idea ...................... 6

            1.    The '409 Patent Does Not Claim a Result ................................................. 6

            2.    Recall "Human Activity" Argument Contradicts Its Own
                  Description of the Claims ........................................................................ 11

      B.    *Alice* Step Two:  The Claims Encompass an Inventive Concept ......................... 18

      C.    Claim 1 Is Not Representative ......................................................................... 20

V.    CONCLUSION ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*,
    889 F.3d 735 (Fed. Cir. 2018) .................................................................. 10

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ........................................................... 8, 16

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
    97 F.4th 1371 (Fed. Cir. 2024) .......................................................... 14, 15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................................ 6

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) .............................................................. 14

*Ancora Technologies, Inc. v. HTC America, Inc.*
    908 F.3d 1343 (Fed. Cir. 2018 ................................................... 12, 13, 18

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ......................................................... 18, 20

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) .............................................................. 21

*CardioNet, LLC v. InfoBionic, Inc.*,
    955 F.3d 1358 (Fed. Cir. 2020) .............................................................. 17

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018) ..................................................... 8, 13, 14

*Corning v. Burden*,
    56 U.S. (15 How.) 252 (1854) .................................................................. 7

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
    15 F.4th 1091 (Fed. Cir. 2021) ................................................................. 6

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) .......................................................... 1, 12

*Dell Inc. v. Acceleron, LLC*,
    818 F.3d 1293 (Fed. Cir. 2016) .............................................................. 10

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980) ................................................................................ 5

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ........................................................................................... 7

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .................................................................. *passim*

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
   No. 2022–1932, 2024 WL 371959 (Fed. Cir. Feb. 1, 2024), *cert. denied*, 145 S.
   Ct. 149 (2024) ................................................................................................. 19

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) ...................................................................... 14

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ............................................................. 8, 14, 18

*Fortinet, Inc. v. Forescout Techs., Inc.*,
   No. 20-cv-03343, 2020 WL 6415321 (N.D. Cal. Nov. 2, 2020) ...................... 20

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
   39 F. Supp. 3d 1080 (N.D. Cal. 2014) ............................................................ 11

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021) ...................................................................... 14

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
   60 F.4th 1349 (Fed. Cir. 2023) ..................................................................... 8, 9

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ........................................................................ 7

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019) ........................................................................ 8

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) .................................................................... 7, 8

*MyMail, Ltd. v. ooVoo, LLC*,
   934 F.3d 1373 (Fed. Cir. 2019) .................................................................. 6, 11

*Packet Intel. LLC v. NetScout Sys., Inc.*,
   965 F.3d 1299 (Fed. Cir. 2020) ...................................................................... 15

*People.ai, Inc. v. Clari Inc.*,
   Nos. 2022–1364, 2022–1366, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) .......... 14

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
   827 F.3d 1042 (Fed. Cir. 2016) ........................................................................ 6

*Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*,
No. 2021–1906, 2022 WL 794981 (Fed. Cir. Mar. 15, 2022) .................................. 15

*In re Schreiber*,
128 F.3d 1473 (Fed. Cir. 1997)............................................................................ 18

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019)..................................................................... 14, 18

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020)..................................................................... *passim*

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016).............................................................................. 9

*Uniloc USA, Inc. v. ADP, LLC*,
772 F. App'x 890 (Fed. Cir. 2019) ....................................................................... 7

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*
957 F.3d 1303 (Fed. Cir. 2020)........................................................................... 13

*Visual Memory LLC v. NVIDIA Corp.*
867 F.3d 1253 (Fed. Cir. 2021)...................................................... 12, 14, 15, 17

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021)............................................................................. 15

**STATUTES**

35 U.S.C. § 101 ........................................................................... 5, 6, 11, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a)(2) ..................................................................................... 21

GONG.IO'S OPPOSITION TO
DEFENDANT'S RENEWED MOTION TO DISMISS
CASE NO. 5:25-CV-01026-NW

1

## I.    **INTRODUCTION**

2        Recall offers two contradictory arguments that U.S. Patent No. 9,699,499 (Dkt. 35-1, the

3 "'409 patent") is invalid. On the one hand, Recall argues that the '409 patent is directed to "using

4 a bot to record a videoconference," and is unpatentable because it "simply recites the desired

5 result … without reciting a specific solution for accomplishing that goal." Mot. to Dismiss Am.

6 Compl. ("Br.") 1, 7-8, Dkt. 39. Yet Recall also admits there are "myriad ways" to record

7 conferences that differ from the claimed techniques. Br. 6. By acknowledging that many

8 recording methods fall outside the claims, Recall concedes the '409 patent describes *one specific*

9 solution for obtaining a video conference recording, not the result itself, and is therefore patent

10 eligible. *See TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020).

11        The '409 patent is also patent eligible because it addresses "'a problem specifically arising

12 in the realm of computer networks' or computers": how to effectively record online video

13 conferences. *Id.* at 1293. The allegations in the complaint, which are taken as true on a motion to

14 dismiss, explain why. Recording video conferences poses distinct challenges compared to

15 recording in-person meetings, which can be recorded simply by using a video camera to record a

16 physical conference room. Because there is no conference room to be recorded when users are in

17 an online meeting, users tried a variety of alternative techniques prior to the '409 patent. These

18 techniques, like using screen-recording software or training a camera at a participant's monitor,

19 had notorious privacy and performance issues, and often did not work at all. First Am. Compl.

20 ("FAC") ¶¶ 22-24, Dkt. 35; *see also id.* ¶¶ 25-29.

21        The '409 patent went a different route. It allowed "unintrusively recording"

22 videoconferences "transparently to the participants" by, among other things, obtaining

23 information on a conference (e.g., through pulling it from participants' calendars), creating a

24 "virtual participant," and having it join the conference by emulating a human's interactions with a

25 graphical user interface. FAC ¶¶ 30-38. That is an unconventional solution to "a problem that

26 does not arise" outside of cyberspace, and is patent eligible. *DDR Holdings, LLC v. Hotels.com,*

27 *L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014).

28

## II.    FACTUAL BACKGROUND

### A.    Gong's Innovative Virtual Conference Recording Technology

Gong uses artificial intelligence to enable businesses to capture, analyze, and act on customer interactions. FAC ¶ 1. Among Gong's innovations is its call recording software, which allows businesses to record online meetings and ensure that information does not fall through the cracks. *Id.* ¶¶ 1-2. The software uses a "Gong bot" to join web conferences as a participant to record and document the sessions. *Id.* ¶ 2. Recall acknowledges that "Gong's recording bot is a signature part of their product." *Id.* ¶ 7. Recall not only copies Gong's technology but explicitly teaches its customers how to "replicate Gong's recording bot with Recall.ai." *Id.*

### B.    The '409 Patent

U.S. Patent No. 9,699,409 (the "'409 patent"), entitled "Recording Web Conferences," protects Gong's videoconference-recording innovations. *Id.* ¶ 3. Issued to Gong's co-founders—its CEO and Chief Product Officer—the patent claims priority to an application filed in 2016, long before video conferencing became the ubiquitous tool they are today. *Id.* ¶¶ 3, 14. As the patent explains, there is often a "need to document virtual meetings" using "a recording of audio and video data from the virtual meeting." *Id.* ¶ 17 (citing '409 patent, 1:35-40). Specifically, the patent describes and claims ways to "unintrusively record[]" these meetings, "transparently to the participants" by, among other things, "identifying … virtual conferences being operated by a conferencing system," using a "virtual participant [that] emulates a human attendee, logging into a meeting supported by a conventional videoconferencing program" like Google Meet or Microsoft Teams, and "recording information streams of the human participants." *Id.* ¶¶ 18-19 (citing '409 patent, 1:46-48, 57-65, 16:1-3, 16:7-11, Fig. 2).

### C.    Problems with Prior Recording Methods

To see why the '409 patent describes and claims an unconventional solution to recording virtual conferences requires contrasting Gong's inventions to what came before. Prior to Gong's inventions, recording an online video meeting required elaborate and often ineffective methods. *Id.* ¶ 21. For example, many users relied on screen capture programs like TechSmith Camtasia, QuickTime Player, or Open Broadcaster Software (OBS) running on their computer to record

their screen and system audio. *Id.* ¶ 22. These software tools captured whatever was on the user's display. *Id.*

These DIY solutions left much to be desired. Users described "trying to record both sides of a Skype call" using this technique as a "nightmare" with one noting that when trying to "record[] on the same machine doing the conference, … the developers all called in sick." *Id.* ¶ 23. The issues fell into three categories:

**Privacy:** Screen recording tools created privacy risks for both the user making the recording and the ones being recorded. *Id.* ¶ 23. With respect to the user making the recording, the screen-recording tool captured everything on screen, including private messages and notifications. *Id.* ¶ 24. Meanwhile, other participants would not necessarily be notified that one of the meeting attendees was running a screen-capture tool, and could therefore be recorded without their knowledge and consent. *Id.*

**Ease of Use:** The prior solutions were also not easy to use. For example, users had to remember to start the screen recorder every time. *Id.* ¶ 25. Forgetting to hit "Record" could be costly: One user admitted that "I forgot to press record on Camtasia and record the webinar!!" *Id.* Reliance on human memory and discipline meant many calls inadvertently went unrecorded. *Id.*

**Performance:** Running screen recording software alongside video conferencing apps degraded computer performance. *Id.* ¶ 26. Users reported their computers "lagging" even with high-end hardware. *Id.* The software also struggled to capture audio and microphone input from all participants simultaneously. *Id.* ¶ 27. Users experiencing problems were told that the software "tends to do what you found; record only one side. If you do force it to record both sides, real-time echo cancellation may crash." *Id.*

Alternative methods also had their own drawbacks. *Id.* ¶ 28. Pointing phones at screens or recording with external cameras produced poor quality audio and video. *Id.* Some videoconferencing platforms had their own meeting-recording tools, but these had their own limitations. *Id.* ¶ 29. The platform-specific nature of those systems was an additional problem because users regularly switch between different conferencing systems depending on who they are meeting with. *Id.* As a result, they could be forced to use a system with sub-par, non-standard,

or even non-existent call-recording features.

### D.    Gong's Technical Solution

The inventions of the '409 patent elegantly solve these issues. *Id.* ¶ 30.

**Automatic Conference Identification:** The '409 patent solves the problem of missed recordings by automatically identifying conferences. *Id.* ¶¶ 30-33. Claim 1 requires "identifying a plurality of virtual conferences being operated by a conferencing system connected to a communications network," while claim 13 specifies, "obtaining a schedule of virtual conferences." The patent details multiple technical approaches for identifying conferences and obtaining a schedule of virtual conferences. '409 patent, 6:22-24. For example, the details "can be obtained from users' calendar, customer relationship management (CRM) and/or call scheduling software when suitable access is granted." FAC ¶ 32 (quoting '409 patent, 6:31-34). The '409 patent also explains that conference details "can be obtained … from the conference provider via an API" and provides "an exemplary SOAP (Simple Object Access Protocol) to obtain conference details from WebEx servers" (i.e., a query that can be sent to the servers associated with the WebEx videoconferencing system to obtain conference details), along with a detailed sample request. '409 patent, 6:25-28, 12:47-13:16. This automated approach eliminates human error in starting recordings and integrates seamlessly with existing workflows.

**Virtual Participants:** Instead of screen recording, the '409 patent uses virtual participants (i.e., bots) that join and record conferences like human attendees. FAC ¶¶ 36-37. Virtual participants provide privacy protection because they can only see what human participants see. *Id.* ¶ 38. They do not see private information that appears only on one participant's screen. *Id.* Virtual participants also ensure that all human participants know that they are being recorded because the bots appear as visible attendees. *Id.* ¶ 39. For example, in the exemplary screenshot below, the virtual participant appears as the "Hack the Box Notetaker":



*Id.* ¶ 39.

**Performance Improvements:** The performance issues are also solved because, unlike with screen capture software, the heavy lifting of recording can be offloaded from the user's computer. *Id.* ¶ 40. The virtual participant can run on a third-party computer or even the cloud, rather than on a user's local machine. '409 patent, 10:14-18. In addition, the bot is not limited by the functionality built into the video conferencing system (e.g., Zoom, Teams, Google Meet, etc.) itself. FAC ¶ 41.

The patent provides detailed implementation guidance for each of these technical solutions. *Id.* ¶ 42. For example, the '409 patent includes seven "Computer Program Listings" that provide exemplary computer code, data, and API requests. *Id.* ¶¶ 43-47. This solution represents a fundamental improvement over previous recording methods, solving multiple technical problems while providing clear implementation guidance.

## III.   <u>LEGAL STANDARD</u>

Section 101 provides that "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," may be patented, subject to the Patent Act's other conditions and requirements. 35 U.S.C. § 101. Section 101 thus defines in "expansive" terms the subject matter that may be patented. *Diamond v. Chakrabarty*, 447 U.S.

303, 308 (1980). The Supreme Court has set forth a two-step test for distinguishing eligible from ineligible patents. First, a court must determine whether the claimed invention is "directed to" an abstract idea or other ineligible subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). If not, the Section 101 inquiry is over, and the claim is patent eligible. *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016). If the answer is "yes," the court proceeds to step two. *Id.* At step two, a court must "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (citation omitted).

At the motion to dismiss stage, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1378 (Fed. Cir. 2019). Patent eligibility under § 101 is a question of law that may contain underlying questions of fact. *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1095 (Fed. Cir. 2021)

## IV.    ARGUMENT

### A.    *Alice* Step One: The Claims Are Not Directed to an Abstract Idea

Recall argues the claims are directed to an abstract idea for two distinct reasons: (1) they claim a result; and (2) they claim a practice humans conducted without computers. The problem is that these two arguments depend on inconsistent characterizations of the '409 patent (both incorrect): The first asserts the claims are directed to "recording virtual conferences using virtual participants" while the second depends on the claims being directed simply to "recording a virtual conference." There is no way to resolve this inconsistency while leaving Recall's argument standing.

#### 1.    The '409 Patent Does Not Claim a Result

Recall's characterization of what the '409 patent is directed to is incomplete and does not account for all features of the claims. But even so it makes clear that the patent is not directed to a mere result but a particular means for achieving that result. And when Recall's characterization is corrected to account for the full scope of the claimed invention, Recall has no argument at all the claims are to a result.

**a.    Recall's Own Description of the Claims Shows They Do Not Claim a Result**

The very phrasing of Recall's characterization of the alleged abstract idea disposes of the notion that claim 1 of the '409 patent is directed to a result: "recording virtual conferences *using virtual participants*" (Br. 3 (emphasis added)) includes both a result (recording virtual conferences) and a *means* for achieving that result (using virtual participants). Using a particular technique for achieving a result does not make an invention result-oriented. On the contrary, every invention is a particular way of achieving a result, from *using* a heated tungsten filament to illuminate a room to *using* a web application to transmit electronic mail. There is no bar to obtaining "a patent for the means or method of producing a certain result, or effect, and not for the result or effect produced," a rule so old that one of the citations that follow this sentence is to a Supreme Court nominative reporter. *Diamond v. Diehr*, 450 U.S. 175, 182 n.7 (1981) (quoting *Corning v. Burden*, 56 U.S. (15 How.) 252, 267-268 (1854)).

It is true that one cannot patent simply using a computer to achieve some result. But that is not what the '409 patent does. A patent is invalid on the grounds of claiming a result if it "spell[s] out what it means to 'apply it on a computer.'" *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). What the law forbids is patenting the bare result of automation, "where 'it matters not by what process or machinery the result is accomplished.'" *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016); *see TecSec*, 978 F.3d at 1293-94 (pointing out that the law does not forbid claiming a "specific" way of accomplishing a result). So even if "[i]t is true … that the goal of the claims is functional," the claims are still patent eligible when "the patent claims a particular improvement in *how* this is done." *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 897 (Fed. Cir. 2019).

The '409 patent falls squarely on the eligible side of these cases. It does not claim all ways of recording virtual conferences—only the specific technique of using virtual participants that emulate human behavior. Recall cannot make any argument that the claims here merely spell out what it means to record virtual conferences on a computer because it *admits* that "recording virtual conferences … can be implemented in myriad ways," including other *computerized* ways,

like "using recording software to record the participants' video and audio streams." Br. 6. And Recall was right about that. As Gong's complaint makes clear, there *were* many other ways to record virtual conferences, from using screen capture software to pointing an iPhone at the screen. FAC ¶¶ 22, 28-29. Even though Gong's complaint spelled out those methods in detail, Recall does not suggest that any of them are covered by the claims of the '409 patent. When the claim "do not simply recite, without more, the mere desired result," but instead "recite a specific solution for accomplishing that goal," they are patent eligible. *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019).

If Recall were right that just *using* a certain specific technique to accomplish a result were enough to render the claims result-oriented, much of Federal Circuit case law would have come out differently. For example, "employing a flexible, self-referential table to store data" was not abstract even though the *purpose* of employing the table—storing data—is unquestionably a result. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). Using an "application summary window" to display a "limited set of information to the user" was not abstract even though displaying information is a result. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362-63 (Fed. Cir. 2018). Synchronizing the speech of animated characters is a result that has been pursued for over a century, but that fact did not prevent patenting a specific type of rules for doing so. *McRO*, 837 F.3d at 1313. In *Finjan*, the court acknowledged that virus scanning was well-known and abstract, but found that accomplishing it using a "behavior-based" approach (in contrast to prior "code-matching" virus scans that compared the scanned code to "a database of known suspicious code") was patentable. *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1304 (Fed. Cir. 2018).

The two cases Recall relies on to contend the '409 patent claims a result—*Affinity Labs* and *Hawk Technology*—notably did not involve claims to *using* any particular technique to accomplish a result, as Recall admits the claims here do. In *Affinity Labs*, the patents "claim[ed] the function of wirelessly communicating regional broadcast content to an out-of-region recipient, not a particular way of performing that function." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016). And *Hawk Technology*, to which Recall devotes a whole

subsection (Br. 15-16), made clear that the claims there "fail[ed] to recite a specific solution" to the alleged problem of simultaneous viewing multiple videos. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023). There, the claims relied on black-box "parameters," to which neither "the claims ([n]or the specification)" gave content. *Id.* at 1357. The '409 patent is different. It claims a specific technical solution, using virtual participants (bots), to record conferences rather than screen recorders, cameras, and other previously-used kludges. Br. 1. The specification extensively details how the virtual participants work. '409 patent, Figs. 1–2; 1:44–56; 6:47–50; 8:25–28; *see also* FAC ¶¶ 31–33, 36. 42–47. Even Recall admits the claims require "a particular technique" and that "myriad" other techniques exist outside the patent's scope. Br. 1, 6. This admission confirms the '409 patent claims a specific solution, not just a result.

### b.    There Is No Argument that The Claims as Actually Written Are Results-Oriented

The preceding discussion makes clear that even Recall's own distillation of the challenged claims is inconsistent with its argument that those claims are results-oriented. But Recall's characterization of the claims is too limited. It violates the carinal rule that "in determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims…" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). When all aspects of the claim are properly taken into account, Recall has no argument that they are directed to an abstract idea.

Recall ignores two critical claim elements. First, the claims require "identifying a plurality of virtual conferences being operated by a conferencing system," and "registering the virtual participant processes with the conferencing system as co-participants in the virtual conferences by emulating human interactions with a graphical user interface." With respect to the first ("identifying") limitation, the complaint makes clear that one problem with prior systems for recording conferences is that "users had to remember to start the screen recorder every time." FAC ¶ 25 (noting an example of a user forgetting to record a webinar). Gong's method solves this problem by having the inventive system (rather than a human) "identify[]" the virtual conferences

to be recorded, thus "integrating recording into the participants' workflow." *Id.* ¶ 34; *see also id.* ¶¶ 32–33. Recall correctly notes that the patent is not limited to a *specific method* for identifying the virtual conferences, because the specification mentions multiple ways to implement the claim step (e.g., connecting to a team's online calendar, or using a specific API call). Br. 11–12. But Recall incorrectly concludes that because the step can be performed in multiple ways, it can be treated as a nullity. That not only does not follow logically, but "runs counter to the claim-construction principle that meaning should be given to all of a claim's terms." *Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1300 (Fed. Cir. 2016). Put differently, in order to show infringement of claim 1, Gong must demonstrate that the infringing system "identif[ies] a plurality of virtual conferences being operated by a conferencing system." Both fairness and the law prevent Recall from ignoring that same claim limitation when asserting that the claim is invalid. *See 01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 743 (Fed. Cir. 2018) (noting that "claim terms must be 'construed the same way for both invalidity and infringement'" (citation omitted)).

The same is true of the limitation requiring "registering the virtual participant processes with the conferencing system as co-participants in the virtual conferences by emulating human interactions with a graphical user interface." That limitation excludes, among other things, recording systems with a virtual participant that is implemented as a component of the videoconferencing system itself. FAC ¶ 36. If Microsoft Teams implemented its own "virtual participant," for example, it would have no need to register "by emulating human interactions with a graphical user interface" of the videoconferencing system, because the virtual participant would live on Microsoft's servers and Microsoft would simply design it to be able to access the conference directly, without the need for emulating any human interactions. *See also* '409 patent, Fig. 1 (showing the virtual participant (30) and conference software (28) on different computers). All that Recall has to say about this limitation is that "even if Gong were correct that" the virtual participant was required to be "'located on a different computer relative to the conferencing system,' inherent attributes of an abstract idea do not make a claim any less abstract." Br. 14–15 (citations omitted). But it offers no argument that the "registering" limitation *is* an inherent

attribute of "recording a virtual conference using a virtual participant." As just demonstrated, it is not.

Recall has not made any argument that if either of these limitations are part of the claims, the claims are directed to an abstract idea, and has therefore forfeited any such argument. To the extent that Recall thinks these claim terms should be construed into nonexistence, its motion to dismiss is premature. If the parties raise a claim construction dispute at the pleadings stage, "the district court must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *MyMail*, 934 F.3d at 1379. Resolving the dispute in Recall's favor would not be appropriate given that it has not articulated how to square its proposed constructions with the claim language, much less given Gong a chance to respond.

### 2. **Recall "Human Activity" Argument Contradicts Its Own Description of the Claims**

Interspersed throughout Recall's argument that the '409 patent claims a result is another argument: That the claims are abstract because "humans have long engaged in the practice of recording virtual conferences." Br. 6; *see also* Br. 8 ("The claim simply swaps the human participant for a computer program"). Recall presumably intends to invoke the prohibition against patenting processes that "can be performed in the human mind, or by a human using a pen and paper." *France Telecom S.A. v. Marvell Semiconductor Inc.*, 39 F. Supp. 3d 1080, 1096 (N.D. Cal. 2014).

Where the wheels fall off this argument is that it requires replacing Recall's own previous description of the claims as covering "recording virtual conferences using virtual participants" (Br. 3) with a new one—"recording virtual conferences" (Br. 6). That is because the former characterization of the claims makes clear that it is inherently computer-centered: Try recording a meeting with a virtual participant created with pen and paper or the human mind and you will not get very far.

The reason why Gong's claims do not simply computerize a human practice is because they solve "a problem specifically arising in the realm of computer[s]." *TecSec*, 978 F.3d at 1293.

Consider what someone applying Recall's reasoning would have said in response to the famous initial demonstration of the computer mouse:[1] "Nice demo, but there's nothing inventive about what we just witnessed here. Humans have been manipulating objects since developing opposable thumbs. When you dragged that folder from your desktop to the trash with your mouse, the very words you used demonstrate that it's no different from what I do every day when I use my hands to toss a Manila folder into the waste bin by my desk."

The immediately apparent flaw in this argument is that it ignores the fundamental technical problem: users cannot physically reach into computer screens to move digital objects. The mouse solved this computer-specific challenge with a novel technical solution, a peripheral device that translates physical movement into on-screen pointer control.

So too here. Recording virtual conferences differs in important ways from recording those that take place in person. As the Complaint explains, previous techniques for recording virtual meetings faced technical and privacy concerns that do not occur in an in-person meeting, from failure to capture all participants' audio, to participants being recorded without their consent, to private portions of the screen being captured. FAC ¶¶ 23–29. These are problems that have no counterpart outside the realm of virtual conferences conducted on computers, and they required a different and inventive solution. Gong's claims provided that solution, and are patentable because "the focus of the claimed advance is … on improving" the prior art systems. *TecSec*, 978 F.3d at 1296.

The Federal Circuit has recognized time and time again that such technical solutions to technical problems are patentable. In *DDR Holdings*, the problem in question was the difficulty of retaining visitors after they clicked on a hyperlink that took them to pages with a drastically different look-and-feel. 773 F.3d 1245 at 1257–58. In *Visual Memory LLC v. NVIDIA Corp.*, the Federal Circuit found that accommodation of different types of processors without compromising performance was a technical problem. 867 F.3d 1253, 1259–60 (Fed. Cir. 2017). In *Ancora Technologies, Inc. v. HTC America, Inc.*, the Federal Circuit held that patent claims directed to solving the "vulnerability of license-authorization software to hacking" were "directed to a

---

[1] https://en.wikipedia.org/wiki/The_Mother_of_All_Demos.

solution to a computer-functionality problem." 908 F.3d 1343, 1347–49 (Fed. Cir. 2018). In *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, the "reduction of latency" in certain communication systems was found to be a problem arising in a technical context, the solution to which was therefore patentable. 957 F.3d 1303, 1308 (Fed. Cir. 2020). And in *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, the court held patent eligible claims directed to an improved user interface that enabled users to more quickly access stored data and programs in small-screen electronics. 880 F.3d at 1359–63. The court determined that "the claims [we]re directed to an improvement in the functioning of computers, particularly those with small screens." *Id.* at 1363. Like these cases, Gong's claims provide a "specific asserted improvement in computer capabilities," a recognized category of patentable inventions. *Enfish*, 822 F.3d at 1335–36.

Recall's response appears to be that Gong's claims do not provide technical solutions to a technical problem because they do not provide "any technical detail explaining how to implement them." Br. 3; *see also id.* 9–16. Recall offers several articulations of this argument, but none of them can be squared with the claims, specification, or indeed Recall's own statements.

*First*, Recall contends the claims need to provide "specific technical detail as to ***how*** to implement the abstract idea of using a virtual participant to record video conferences." Br. 13. But that is not right—a patentee does not need to shoehorn reams of code into the claims to provide a technical solution to a technical problem. What matters is whether the claims are to "a non-abstract computer-functionality improvement" using "a specific technique that departs from earlier approaches to solve a specific computer problem." *Ancora Techs.*, 908 F.3d at 1348, as amended (Nov. 20, 2018). And that is the case here, because the use of a virtual participant that identifies virtual conferences and registers with the conference by emulating human interactions with a graphical user interface departs from earlier approaches to recording conferences like screen capture software or built-in recording features. FAC ¶¶ 21–30.

Again, if the law were as Recall claims, the numerous Federal Circuit cases finding claims patent eligible despite not reciting technical implementation details would have come out

1  differently. For example, in *Core Wireless*, the claims did not attempt to provide a blueprint, but

2  recited:

> A computing device comprising a display screen, the computing
> device being configured to display on the screen a menu listing one
> or more applications, and additionally being configured to display
> on the screen an application summary that can be reached directly
> from the menu, wherein the application summary displays a limited
> list of data offered within the one or more applications, each of the
> data in the list being selectable to launch the respective application
> and enable the selected data to be seen within the respective
> application, and wherein the application summary is displayed
> while the one or more applications are in an un-launched state.

*Core Wireless*, 880 F.3d at 1359. The claims in *Finjan* likewise did not recite code, block

diagrams, or other technical details, but were found patentable:

> A method comprising:
>
> receiving by an inspector a Downloadable;
>
> generating by the inspector a first Downloadable security profile
> that identifies suspicious code in the received Downloadable; and
>
> linking by the inspector the first Downloadable security profile to
> the Downloadable before a web server makes the Downloadable
> available to web clients.

16  *Finjan*, 879 F.3d at 1303, 1305 (rejecting the accused infringer's argument that the claims were

17  abstract "because they do not sufficiently describe how to implement [the] idea"); *see also Visual*

18  *Memory*, 867 F.3d at 1257; *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299

19  (Fed. Cir. 2016); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1301 (Fed. Cir. 2019). The

20  claims here recite how the desirable result is achieved (at least by "using a virtual participant," as

21  Recall admits), unlike the cases Recall relies on. *See, e.g.*, *Free Stream Media Corp. v. Alphonso*

22  *Inc.*, 996 F.3d 1355, 1363–64 (Fed. Cir. 2021) (noting that the claims did not "describe how [the

23  desirable] result is achieved"); *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d

24  1317, 1328 (Fed. Cir. 2020) (noting claims did not recite a way of achieving results); *People.ai,*

25  *Inc. v. Clari Inc.*, Nos. 2022–1364, 2022–1366, 2023 WL 2820794, at *9 (Fed. Cir. Apr. 7, 2023)

26  (distinguishing *Finjan* on the basis that the claims before the court "do not improve computer

27  functionality"); *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378

28  (Fed. Cir. 2024) (finding the claims directed to nothing more than "converting data and using

- 14 -

computers to collect, manipulate, and display the data" rather than a particular means of doing so); *Repifi Vendor Logistics, Inc. v. IntelliCentrics, Inc.*, No. 2021–1906, 2022 WL 794981, at *2 (Fed. Cir. Mar. 15, 2022) (claims were directed to "the abstract idea of credentialing visitors and checking them in and out of an access-controlled environment" rather than a particular way of doing so); *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021) ("What is claimed is simply a generic environment in which to carry out the abstract idea.").

Recall also urges this Court to close its eyes to the considerable detail provided in the specification as to how the claim steps can be accomplished and how they differ from what came before, including sample code and API calls. Br. 10–11. But courts are supposed to use the specification as part of the § 101 analysis to illuminate the claims, determine how the claimed invention differs from the prior art, and identify its benefits. In *Enfish*, for example, the court explained that its description of the claims was "underscored by the specification's emphasis" on the invention being directed to a self-referential table, and its "conclusion that the claims are directed to an improvement of an existing technology [was] bolstered by the specification's teachings." *Enfish*, 822 F.3d at 1337–38; *see also Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (noting that "[i]n our eligibility analysis, we … read [the claims] in light of the specification" and holding that "[t]he asserted patents' specifications make clear that the claimed invention presented a technological solution to a technological problem."). And in *Visual Memory*, the court batted away arguments that "the patent lacks any details about how [the invention's purpose] is achieved," pointing to the fact that "the patent includes a microfiche appendix having a combined total of 263 frames of computer code," similar to the "Computer Program Listings" found in the '409 patent (FAC ¶ 43). 867 F.3d at 1261 (alteration in original). The cases Recall cites—*ChargePoint* and *AI Visualize*—warn against *importing limitations* from the specification into the claims. They do not bar using the specification to inform the claims as part of the eligibility analysis. It certainly makes no sense to complain that the patent lacks technical detail on how the claims are to be implemented, and then ignore portions of the patent that do just that.

Recall also acknowledges that the specification describes conference recording as

conventional (Br. 20), but fails to recognize that this undermines its own position: The '409 patent discusses prior methods precisely to distinguish its novel approach. The patent describes the prior art to make clear that it claimed a *better way* of recording virtual conferences. This case therefore differs from those in which "[n]othing in … the text of the specification provides any details regarding the manner in which the invention accomplishes the recited functions." *Affinity Labs*, 838 F.3d at 1260; *see also* FAC ¶¶ 31–33, 36, 42–47.

*Second*, Recall dismisses the benefits of Gong's solution as "unclaimed" and therefore "irrelevant." Br. 12–14. Recall misunderstands why the benefits are relevant. The fact that Gong's inventions had significant benefits (or, differently stated, the other ways to record virtual conferences had significant problems) demonstrates that the '409 patent solves a technical problem in virtual conferencing. Think back to the mouse example: the mouse's key benefit, avoiding memorizing and typing in complicated commands, demonstrated it solved a computer-specific problem. Physical object manipulation does not require memorizing commands, but computer interfaces did until the mouse provided a technical solution.

Likewise, the '409 patent's benefits—solving privacy problems and difficulty capturing the entirety of a conversation are issues that did not exist prior to virtual conferences, prove it addresses technical challenges unique to virtual conferencing, as distinguished from physical conferencing. Recall's attempts to deny the existence or significance of those benefits fails both as a matter of logic and the relevant legal standard, which requires crediting the allegations in the complaint:

1. **Automatic Conference Detection:** The '409 patent discloses that in the system performing the inventive method "details of the conference to be recorded are obtained," such that a human does not need to obtain them. FAC ¶ 31. And claim 1 explicitly requires "identifying a plurality of virtual conferences being operated by a conferencing system." No law requires putting the technical details of how the identification is performed in the claims themselves, especially when they are described in detail in the specification. *Id.* ¶¶ 32–33.

2. **Privacy Protection:** The '409 patent also solves the privacy issues raised by other ways

of recording meetings, like using a screen recorder. *Id.* ¶¶ 36–41. Recall insists that claim 1 does not "recite any specific solution to these problems," but anyone who has ever joined a Zoom meeting (or seen the screenshot at *id.* ¶ 39) will know that you can see if a user (including a bot) is in the meeting. That prevents surreptitious recording—unlike if one of the users is using a screen recorder. By contrast, it "says right on the tin" that a screen recorder will record what is on the screen, including portions meant to be private, unlike a bot that just sees what any other participant sees. *Id.* ¶¶ 24, 38.

3. **Performance Improvements:** The '409 patent also allows the virtual participant to be on a different machine, unlike a screen recorder, which must be on the user's computer and therefore consumes the user's resources. *Id.* ¶¶ 26, 40. Recall objects that the claims "do not *require* that the virtual participant processes be executed at a separate computer than the human participants." Br. 14 (emphasis added). That's right, but by using a virtual participant, one has the *option* of offloading the software to a different computer, unlike when one uses a screen recorder. FAC ¶¶ 40. As for Recall's suggestion that performance improvements don't count, nothing requires the Court to ignore these benefits. *See, e.g.*, *Enfish*, 822 F.3d at 1337 (considering the "faster search times" achieved by the claimed invention); *Visual Memory*, 867 F.3d at 1255–56, 1259 (relying extensively on invention's performance improvements in finding claims eligible).

4. **Complete Conversation Capture:** The '409 patent solves the technical challenge of recording all participants' audio simultaneously. FAC ¶¶ 27, 40. Recall does not address this problem at all.

Insisting, as Recall does, that these benefits need to be *claimed* is a category error: *Benefits* naturally flow from *practicing the* invention. It is unclear what it would even mean to claim a *benefit*. *See CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371 (Fed. Cir. 2020) (noting the district court erred by dismissing what the patentee pointed out about "benefits of the claimed device" because on a motion to dismiss "the district court must construe all facts and draw all reasonable inferences in favor of … the non-moving party").

*Third*, Recall suggests that the use of present participles in the claims makes the claims

1    insufficiently specific or technical. Br. 4. But the specificity requirement does not bar a patentee

2    from describing claim elements by their functions. The law explicitly permits functional claim

3    language: "[a] patent applicant is free to recite features of an apparatus either structurally or

4    functionally." *In re Schreiber*, 128 F.3d 1473, 1478 (Fed. Cir. 1997). Indeed, the Federal Circuit

5    has upheld many software inventions claimed in functional terms. *See, e.g., TecSec*, 978 F.3d at

6    1282–83 ("accessing," "selecting," "encrypting"); *SRI Int'l*, 930 F.3d at 1301 ("detecting,"

7    "generating," "receiving"); *Ancora Techs.*, 908 F.3d at 1346 ("selecting," "using," "verifying,"

8    "acting on"); *Finjan*, 879 F.3d at 1303 ("receiving," "generating," "linking"). Thus, Recall's

9    argument relies on a faulty legal premise.

10    For all these reasons, the claims of the '409 patent are not directed to an abstract idea.

11    **B.    *Alice* Step Two:  The Claims Encompass an Inventive Concept**

12    If the Court finds that the '409 patent's claims are not directed to an abstract idea, the

13    analysis ends. *Enfish*, 822 F.3d at 1339. Regardless, the lion's share of Recall's argument with

14    respect to *Alice* step two repeats portions of its step one argument, and has been adequately dealt

15    with above.

16    Having excluded limitations (like identifying virtual conferences, or emulating of human

17    interactions with a graphical user interface) from its articulation of what the claim is directed to at

18    step one, Recall urges that they be ignored at step two as well. But if not considered at step one,

19    they must be considered at step two; they cannot be ignored altogether. *See BASCOM Glob.*

20    *Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016).

21    Recall wrongly dismisses two crucial claim elements. First, contrary to Recall's assertion,

22    the requirement that the computer program identify virtual conferences is explicitly claimed. This

23    automated identification solves the problem of missed recordings, as discussed above. Second,

24    Recall mischaracterizes the requirement that virtual participants register by "emulating human

25    interactions with a graphical user interface" as simply the abstract idea itself. But it is not: It is a

26    specific technical solution distinct from other recording methods. There are other means of

27    recording video conferences that require no such thing, such as built-in features offered by the

28    provider of the video conferencing solution (Google Meet, Microsoft Teams, etc.). The '749

1    Application that Recall itself cites demonstrates the distinction: It shows a recording feature that

2    is provided by the videoconferencing provider. *See, e.g.*, Dkt. 39–2 Fig. 17 (showing a "Record

3    Event" checkbox). For the reasons detailed above, that is a suboptimal solution. Built-in

4    recording features have inherent limitations—they only work on platforms that offer them, and

5    each platform implements recording differently. FAC ¶¶ 29, 41.

6        By contrast, the '409 patent claims using a bot that is not simply a feature provided by the

7    videoconference provider. If the recording is outsourced to a bot rather than incorporated into the

8    virtual conferencing platform itself, how does the bot get access to the video, audio, and other

9    information from the videoconferencing provider? The '409 patent provides the answer: The bot

10   "emulate[es] human interactions with a graphical user interface" ('409 patent, claim 1), with

11   exemplary detailed technical details and code provided in the patent (*see, e.g., id.*, 11:24–29,

12   13:20–52, 15:23–43). These benefits flow directly from the claimed features, contradicting

13   Recall's unsupported assertion to the contrary.[2] Br. 12

14       The primary case Recall relies on (Br. 19–20), *Eolas Technologies*, illustrates why

15   Recall's motion can only succeed by assuming that it will later prevail on an implausible claim

16   construction. *Eolas* was decided on summary judgment after a full-fledged claim construction

17   briefing process, not a motion to dismiss. The district court found the claims abstract only after

18   construing them "to not require that the interactive content applications be internal to the World

19   Wide Web browser." *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 2022–1932, 2024 WL 371959,

20   at *3 (Fed. Cir. Feb. 1, 2024), *cert. denied*, 145 S. Ct. 149 (2024). That was precisely the

21   functionality that Eolas relied on as an inventive concept. *Id.* at *6. Here, Recall's argument

22   depends on a claim construction that it has not yet won. Putting the dubious (and unargued)

23   merits of that claim construction position aside, Recall cannot skip straight to invalidating claims

---

24   [2] Recall also suggests "the use of a separate computer is not claimed," which it says it "explained

25   above." Br. 18. What Recall actually argued above was that the bot did not need to be run on a
     different computer from the one the *human participant* is using (i.e., computer 26 in '409 patent,

26   Fig. 1). Br. 14. Recall never argued that the bot does not have to be on a different computer from
     the one that runs the video conferencing software (i.e., Microsoft Teams, etc., shown as computer

27   12 in '409 patent, Fig. 1). As discussed above, the fact that the bot has to emulate human
     interactions with a graphical user interface in order to register with the video conferencing system

28   shows that the bot is not run on the same computer as the video conferencing system, and that is
     an implementation-specific detail that constitutes an inventive concept for purposes of step two.

1   based on hypothetical constructions.[3]

2       The remainder of Recall's analysis consists of sleight of hand with the specification.

3   Recall quotes the patent's statement that "***well-known*** circuits, control logic, and the details of

4   computer program instructions ***for conventional algorithms and processes*** have not been shown

5   in detail in order not to obscure the general concepts unnecessarily." Br. 16 (quoting '409 patent,

6   4:4–7) (emphasis in original). Recall says this means, "[i]n other words, the specification

7   purposely omits implementation details for the computing components used in the claimed

8   invention because they are so well known and conventional." *Id.*

9       But that is the *opposite* of what the quoted sentence from the patent means: The

10  '409 patent is saying that *because* it includes unconventional algorithms and processes, the

11  portions that are conventional have "not been shown in detail" so as not to obscure the wheat with

12  the chaff. It is unremarkable that an inventive concept can be implemented using conventional

13  hardware: "an inventive concept can be found in the non-conventional and non-generic

14  arrangement of known, conventional pieces." *BASCOM*, 827 F.3d at 1350.

15  ## C.    Claim 1 Is Not Representative

16      Recall asserts that claim is representative of claims 2–12 of the '409 patent. Even if Recall

17  proves claim 1 is representative of claims 2–12 and prevails as to the ineligibility of claim 1,

18  dismissal of the entire complaint is improper. The '409 patent contains 23 claims, and Recall

19  makes no argument about claims 13–23. This omission dooms its request for complete dismissal.

20      The complaint's use of claim 1 as exemplary does not change this analysis. A plaintiff

21  need only allege infringement of "at least one exemplary claim." *Fortinet, Inc. v. Forescout*

22  *Techs., Inc.*, No. 20-cv-03343, 2020 WL 6415321, at *11 (N.D. Cal. Nov. 2, 2020). "[T]his

23  District generally has not required detailed infringement theories until the time that infringement

24  contentions are served…." *Id.* (alteration in original). Thus, even if Recall prevails on claims 1–

25  12, the case proceeds on unchallenged claims 13–23.

26  ---
[3] The remaining cases Recall cites are much further afield. *United Services Auto Association* held

27  that inclusion of a handheld mobile device could not transform an otherwise-ineligible claim into
    an eligible one, and *Recentive Analytics* did the same for machine learning algorithms. Br. 18.

28  Those cases may be relevant where a patentee is relying on such components as an inventive
    concept, but they are not relevant here.

That point aside, Recall is also incorrect that claim 1 is representative of claims 2–12. A central thrust of Recall's argument has been that claim 1 needed to provide more "specific technical detail as to *how* to implement the abstract idea of using a virtual participant to record video conferences." Br. 13. If that is the argument, then Recall cannot wave away claims that *do* provide additional technical detail, as many of the dependent claims do. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("A claim is not representative simply because it is an independent claim."). For example, claim 2 specifies that—"executing a plurality of virtual participant processes"—requires "spawning a virtual machine in the processor and executing the virtual participant processes in the virtual machine." That is a specific technical recipe, and certainly provides "specific technical detail." Similarly, claim 11 details that registration occurs "by modifying at least one of a registry entry, a configuration file, and an internal database in the conferencing system." Again, that is technical detail, so it is incumbent on a party whose case rests on arguing that the claims *lack* technical detail to address the technical detail that *is* found in the claims.

Having argued the claims lack technical specificity, Recall cannot ignore dependent claims that provide exactly that. While representative claim analysis can be appropriate, it fails here where the challenger's core argument—lack of technical detail—is directly contradicted by the dependent claims' content.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Gong respectfully requests that the Court deny Defendant Recall's Motion to Dismiss the complaint. Gong requests leave to amend the complaint to the extent needed, which leave should be freely granted. Fed. R. Civ. P. 15(a)(2).

Dated: August 6, 2025                        ORRICK, HERRINGTON & SUTCLIFFE LLP


By:   */s/ Raghav Krishnapriyan*
Raghav Krishnapriyan
*Attorneys for GONG.IO, INC*