TIMOTHY CHEN SAULSBURY (CA SBN 281434)
TSaulsbury@mofo.com
JOYCE C. LI (CA SBN 323820)
JoyceLi@mofo.com
IAN A. BENNETT (CA SBN 346555)
IBennett@mofo.com
CLINTON W. EWELL (CA SBN 353961)
CEwell@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone:    415.268.7000
Facsimile:    415.268.7522

*Attorneys for Defendant*
HYPERDOC INC. d/b/a RECALL.AI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GONG.IO, INC., <br><br> Plaintiff, <br><br> v. <br><br> HYPERDOC INC. d/b/a RECALL.AI, <br><br> Defendant. | Case No. 5:25-cv-1026-NW <br><br> **DEFENDANT'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO 35 U.S.C. § 101 AND FED. R. CIV. P. 12(B)(6);** <br><br> Judge: Hon. Noël Wise <br> Date: October 1, 2025 <br> Time: 9:00 a.m. <br> Dept.: Courtroom 3 – 5th Floor |

**TABLE OF CONTENTS**

Page

A. *Alice* Step One: The Claims Are Directed To An Abstract Idea ............................. 1
    1. Gong relies on the specification for improper purposes ............................. 2
    2. The claims are devoid of any specific technique that provides a technical solution to a technical problem ................................................................. 4
    3. The '409 patent does not improve computer technology .......................... 10
B. *Alice* Step Two: The Claims Do Not Contain An Inventive Concept ................... 13
C. Claim 1 Is Representative Of Unasserted Dependent Claims 2-12 ....................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) .................................................................................... 3, 13

*Am. Axle & Mfg. v. Neapco Holdings*,
967 F.3d 1285 (Fed. Cir. 2020) ........................................................................................ 3

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) ................................................................................ 10, 13

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ............................................................................... 2, 3, 15

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F. 3d 1356 (Fed. Cir. 2018) ................................................................................ 11, 12

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014) ...................................................................................... 12

*Ericsson Inc. v. TCL Commc'n Tech.*,
955 F.3d 1317 (Fed. Cir. 2020) ........................................................................ 7, 8, 9, 15

*Finjan, Inc. v. Blue Coat Sys.*,
879 F.3d 1299 (Fed. Cir. 2018) ...................................................................................... 12

*Free Stream Media Corp. v. Alphonso*,
996 F.3d 1355 (Fed. Cir. 2021) ............................................................................ 1, 2, 5, 7

*GREE, Inc., v. Supercell Oy*,
855 Fed. Appx. 740 (Fed. Cir. 2021) .............................................................................. 11

*Hawk Tech. Syst., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ............................................................................... 4, 5, 12

*IBM Corp. v. Zillow Grp., Inc.*,
No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan. 9, 2024) ............................................... 9

*Intell. Ventures I LLC v. Erie Indem. Co.*,
711 Fed. Appx. 1012 (Fed. Cir. 2017) ............................................................................ 14

*LookSmart Grp., Inc. v. Google, LLC*,
2025 WL 1785343 (N.D. Cal. June 26, 2025) ................................................................. 6

*RealTime Data LLC v. Array Networks, Inc.*,
2023 WL 4924814 (Fed. Cir. Aug. 2, 2023) ................................................................. 3, 4

*Recentive Analytics, Inc. v. Fox Corp.*,
   134 F.4th 1205 (Fed. Cir. 2025) .................................................................... 1, 5, 8, 10

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ............................................................................... 1

*Simio, LLC v. FlexSim Software Prods.*,
   983 F.3d 1353 (Fed. Cir. 2020) ........................................................................... 4, 8

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) ............................................................................. 13

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ............................................................................... 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ......................................................................... 3, 14

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020) ............................................................................. 11

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
   139 F.4th 1332 (Fed. Cir. 2025) .......................................................... 11, 13, 14, 15

*Visual Memory LLC v. NVIDIA Corp.*,
   867 F.3d 1253 (Fed. Cir. 2017) ....................................................................... 12, 13

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) .............................................................................. 5, 7

**Statutes**

35 U.S.C. § 101 .................................................................................................... 1, 8, 15

35 U.S.C. § 112 ............................................................................................................. 4

Patents that purport to advance computer technology have been put to the Supreme Court's *Alice* test to separate claims that "focus on a specific means or method that improve[] the relevant technology" from those that are directed "to a result or effect that itself is the abstract idea, and merely invoke generic processes and machinery." *Free Stream Media Corp. v. Alphonso*, 996 F.3d 1355, 1363 (Fed. Cir. 2021). Gong's claims fall in the latter group. What Gong patented was the idea of using the existing, generic technology of "bots" to record virtual conferences like Zoom calls. But to pass muster under *Alice*, Gong's claims must recite more than an idea. Instead, the claims must include specificity in the implementation of the idea, "to transform [the] claim from one claiming only a result, to one claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167–68 (Fed. Cir. 2018). Here, the "way of achieving" the result of recording a virtual conference does not result in any improvement to technology.

Gong does not point to any specific feature in the claims that it invented that improves the way that recording virtual conferences is done. Every claimed feature—from identifying virtual conferences, to the use of virtual participants, to emulating human interactions with a GUI—is performed using conventional computer technology. Gong attempts to obscure that its claims lack the requisite "specific solution" to a problem in computer technology primarily by arguing that the case law has blessed claims that do not actually tell the public how to implement its solution. But that is not the law. The "patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly," and a claim that only discloses a concept without "disclosing how to implement that concept risks defeating the very purpose of the patent system." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025). That is precisely what Gong's claims do, and they should therefore be held invalid under § 101.

### A. *Alice* Step One: The Claims Are Directed To An Abstract Idea

Gong has not demonstrated that the '409 patent is directed to anything more than an abstract idea at step one of the *Alice* test. Gong contends that two claim limitations are relevant to demonstrating that the '409 patent provides a technical solution to a technical problem and improves computer functionality: "identifying a plurality of virtual conferences" and "registering

the virtual participants…by emulating human interactions." But neither of these limitations go beyond reciting an abstract idea with a mere instruction to apply it using well-known computer tools. As such, there is no improvement Gong can point to in the underlying technology of recording virtual conferences. And Gong has not rebutted Recall's assertion that the "solutions" to technical problems Gong points to are either not reflected in the claims at all, or are only benefits of the abstract idea itself rather than any specific technical solution in the claims.

### 1. Gong relies on the specification for improper purposes

Gong uses the specification for the improper purpose of attempting to import limitations into the claims. The only time Gong points to the specification is to rely on code that Gong argues demonstrates that the "patent provides detailed implementation guidance" for the alleged "technical solution" provided by the claims. Dkt. 43 ("Opp.") at 5. Gong argues that this code provides detail "as to how the claim steps can be accomplished and how they differ from what came before." *Id*. at 15. But the ***claims*** must provide the specific technical solution to the technical problem to show that the claims are not abstract. *See Free Stream Media*, 996 F.3d at 1363 ("a claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it to avoid ineligibility"). And Gong never points to anything in the specification showing that this code supports a distinction between the claimed invention and the prior art. Though Gong purports to use the specification to illuminate the focus of the claims, Opp. at 15, it never actually says what it believes the focus of the claims is. As demonstrated below, when the specification is used for its proper purpose—to illuminate the focus of the claims—it underscores that the focus is not a specific solution to a technical problem, or an improvement to computer technology, but rather the mere application of an abstract idea using generic technology as a tool.

Because Gong seeks to use the specification for improper purposes, it is useful to clarify what the specification can and cannot be used for when applying the *Alice* test. At *Alice* step one, the specification can be used to assist the Court in determining what the "focus" of the claims is. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) ("[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language[.]"). At *Alice* step two, the

specification can be used to assist in understanding what the claims add over the prior art to assess whether the claims contain an "inventive concept." *See RealTime Data LLC v. Array Networks, Inc.*, 2023 WL 4924814, at *11 (Fed. Cir. Aug. 2, 2023) (turning to the specification to determine what claim elements are conventional). The specification cannot, however, be used to import limitations into the claims. *ChargePoint*, 920 F.3d at 769; *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024). It also cannot provide support for benefits or solutions that are untethered to a specific feature of the claims—unclaimed features are not relevant to the *Alice* inquiry. *See Am. Axle & Mfg. v. Neapco Holdings*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[W]e have repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) ("The main problem….is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept.").

The specification demonstrates that the focus of the claims is the abstract idea of recording virtual conferences using virtual participants, and shows that Gong's characterization of the "solution" provided by the claims is misguided. The Summary of the Invention states that the present invention can be used to "transparently" and "unintrusively" record virtual meetings. '409 patent at 1:44-46. The method it proposes for doing so is recording a meeting using a virtual participant that emulates a human attendee by logging onto a meeting supported by a "conventional videoconferencing program." *Id.* at 1:44-48. In other words, the purported benefit of unintrusive and transparent recording is achieved using a virtual participant to record a virtual meeting. The virtual participant is described as an "automated computer process" (*i.e.*, a software program), *id.* at 7:4-9, implemented using "general purpose" computer processors, *id.* at 4:57-63. These generic computer components are programmed with "suitable software for carrying out the functions described herein." *Id.* at 4:57-63. The specification does not provide a detail description of this "suitable software," ostensibly because it is generic and would be known to a person of ordinary skill in the art. The patentee never claims that the software used to implement the virtual participant is anything inventive. The software "may be embodied on any of a variety of **known** non-transitory media for use with a computer system. *Id*. at 5:3-5. And "*[c]onventional* web conferencing

software" hosts the virtual conference. *Id*. at 5:28-29. Moreover, the "recorder component is interoperable with" already available "conferencing software" produced by existing vendors. *Id*. at 5:60-65. And the patent merely states that the "virtual participant is spawned and executed by the server, which is connected to the network," without explaining how to generate, configure, or execute the "virtual participant." *Id*. at 5:50-52.

By repeatedly characterizing the computer tools used to carry out the claimed method of using a virtual participant to record a virtual conference as "conventional" and "known," and omitting any assertion that the execution of the virtual participant was inventive or unique, the specification underscores that the focus of the invention is the mere idea of using a virtual participant to record a virtual conference, and not any technical features that improve the underlying technology of conference recording. *See Simio, LLC v. FlexSim Software Prods*., 983 F.3d 1353, 1362 (Fed. Cir. 2020) (finding that the specification's heavy focus on the abstract idea, and little attention dedicated to the functionality of implementing that idea, supports the conclusion that the focus of the claims is an abstract idea). The only technical explanation Gong points to in the specification is not for the purpose of illuminating the focus of the claims—it is an attempt to rely on unclaimed features. And as discussed below, the "technical" detail Gong points to is no more than well-known technology that is simply used to apply the abstract idea that the claims focus on.

### 2. The claims are devoid of any specific technique that provides a technical solution to a technical problem

Gong wrongly contends that the "fact that Gong's invention ha[s] significant benefits… demonstrates that the '409 patent solves a technical problem in virtual conferencing." Opp. at 16. This argument is emblematic of the overarching problem with Gong's opposition: it does not, and cannot, show that the claims contain a "specific technique" that solves a technical problem. It is not enough to just show that the claims provide some benefit. *Hawk Tech. Syst., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) (finding that claims were directed to an abstract idea because they "fail to recite ***a specific solution*** to make the alleged improvement" and "lack sufficient recitation of how the purported invention improves the functionality of video surveillance systems") (cleaned up). All patent claims are required to have some utility, less they be invalid under a separate portion of the patent statute. 35 U.S.C. § 112. But the proper question at step one

of *Alice* is whether the claims recite a technical solution to a technical problem with "the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it." *Free Stream Media*, 996 F.3d at 1363 (cleaned up); *Hawk*, 60 F.4th at 1358. This specificity requirement is critical, because "[a]llowing a claim that functionally describes a mere concept without disclosing how to implement that concept risks defeating the very purpose of the patent system." *Recentive,* 134 F.4th at 1213.

Gong contends that the specific solution to the problems of "how to effectively record online video conferences" is using "virtual participants (i.e., bots) that join and record conferences like human attendees." Opp. at 4. But that is not a specific solution to a technical problem, nor does it show that the claims focus on a specific improvement in computer functionality. The purported solution Gong identifies is nothing more than the abstract idea of using virtual participants to record virtual conferences, using well-known computer components to join and record conferences. A solution that "is the abstract idea itself" cannot amount to a technical solution to a technical problem. *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021).

Gong does not allege that it invented the use of bots (*i.e.*, "virtual participants"). It also does not allege that it invented the technology to register a virtual participant with a conferencing system, or use a virtual participant to record a virtual conference. Nor does it allege that it invented the technology used for "emulating human interactions with a [GUI]." Gong likewise does not allege that it invented a particular way of "identifying" virtual conferences. To the contrary, all of this technology was well-known, and Gong does not assert otherwise. After stripping away what is conventional from the claims, what is left is the bare idea of recording virtual conferences using virtual participants, implemented using well known computer tools to have the virtual participant join the conference. In other words, the only element that that is at all related to implementing the idea of recording a virtual conference using a virtual participant is having a bot register for a conference by emulating human interactions with a GUI (e.g., virtually pushing a "join" button). But that is just functional language implemented using generic computer tools, as thus cannot supply the requisite specific solution to a technical problem. In other words, Gong cannot show that the claimed advance "is something more than a mere use of a computer as a tool." *Free Stream*

*Media*, 996 F.3d at 1364-65. As such, the benefits Gong points to of privacy protection and improved audio[1] are not benefits that arise from a specific technical solution to a technical problem, they are only benefits of the abstract idea itself, and thus cannot show that claim 1 is non abstract.

None of Gong's arguments to the contrary show otherwise. First, Gong continues to improperly rely on unclaimed features as "solutions" to a problem. Gong states that the '409 patent "solves the problem of missing recordings by *automatically* identifying conferences." Opp.at 4. But claim 1 only requires "identifying a plurality of virtual conferences being operated by a conferencing system connected to a communications network," '409 patent, claim 1, not that the "identifying," or starting a recording, is done "automatically." The claims could cover, for example, a system where a user supplies a list of meetings to the virtual participant, the participant "identifies" meetings by parsing that list, registers with the conferencing system, and the begins recording at the prompting of the user. That is different from a system that can interact with a user's calendar, join meetings from the calendar, and automatically begin recording every meeting it joins. Gong concedes that "the patent is not limited to a specific method for identifying virtual conferences," but Gong's argument that the claims may be broad enough to encompass a system in which the virtual conference may be identified automatically using a computer does not help. Opp. at 9-10. For this purported benefit to be relevant to showing that the claims are directed to something more than an abstract idea, Gong must point to some "limiting detail that confines the claim[s] to a particular solution to an identified problem." *LookSmart Grp., Inc. v. Google, LLC*, 2025 WL 1785343, at *10 (N.D. Cal. June 26, 2025) (citation omitted). That detail (even if it could show an improvement in computer technology) is not claimed, and therefore cannot show that the *claims* provides a specific solution.

Second, Gong contends that the '409 patent offers performance improvements in recording virtual conferences, because using virtual participants allows "the heavy lifting of recording" to be offloaded from the users' computer. Opp. at 5. This "solution" suffers from both problems of the prior two purported solutions. First, offloading the virtual participant onto a separate computer is not claimed, and therefore is not a "limiting detail" that provides a particular solution to the

---

[1] Gong does not contend that audio issues are solved by any specific technical improvement in recording technology. This feature purported benefit thus does not support Gong's argument.

DEFENDANT'S REPLY ISO RENEWED MOTION TO DISMISS — 6 — CASE NO.: 5:25-CV-1026-NW

bandwidth problem Gong points to.  Second, to the extent this can be considered a "solution" provided for by the claims, it is only a benefit of using a virtual participant implemented using generic and well-known computer technology. *Yu v. Apple*, 1 F.4th at 1044.  Again, Gong has not alleged that it invented a specific technique that allows the virtual participant to be offloaded to a different computer. That technology already existed, so Gong cannot credit that benefit to itself.

To be clear, Recall has never argued that any "claim terms should be construed into nonexistence" and has thus not forfeited any argument that if the "identifying" or "registering" limitations are part of the claims, the claims are directed to an abstract idea.  Recall's opening brief did not attempt to construe either of these limitations into nonexistence. It simply pointed out, as it has above, that the features of "automatically" identifying a virtual conference and offloading recording onto a separate computer are not claimed features, and thus cannot not supply benefits that show that the claims provide a technical solution to a technical problem.  Recall's entire opening brief was devoted to addressing why these two limitations cannot show that the claims are directed to anything other than an abstract idea, including why the "registering" limitation cannot offer a technical solution to a technical problem because that limitation itself does not do anything more than recite an abstract idea applied using generic computer components.

Gong is also incorrect that because the '409 patent does not claim *all* ways of recording virtual conferences, the claims should automatically be considered a non-abstract technical solution to a technical problem.  In arguing that the claims are not abstract because they are specific to virtual conferencing technology, Gong appears to confuse what is required to show that the claims are directed to more than an abstract idea at *Alice* step one. The requisite specificity is not specificity in the technology the purported solution applies to.  What is required is a specific recitation of ***how*** the solution is implemented, with enough detail to show that the claim includes more than just an idea and an instruction to do it on a computer.  *Free Stream Media*, 996 F.3d at 1363 ("[A] claim must have the specificity required to transform the claim from one claiming only a result to one claiming a way of achieving it to avoid ineligibility) (cleaned up); *Ericsson Inc. v. TCL Commc'n Tech.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020) ("the claims here do not have the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it.").

It makes sense then that the Federal Circuit has repeatedly held that "an abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment." *Recentive*, 134 F.4th at 1213 (*citing Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015)). As such, even assuming there are "myriad ways" to record virtual conferences that are not encompassed by the claims, that does not show that the claims are directed to something more than an abstract idea. The law is clear that limiting the claims to the field of use of virtual participants, as opposed to other techniques of recording conferences, does not render the claims nonabstract. *Id*. Nor is Recall's argument that the claim recites no more than a result in conflict with the argument that there are "myriad" ways to record a virtual conference. Opp. at 6-7. The claim can be limited to the technological environment of the use of a virtual participant, and still recite nothing more than the abstract idea of using that virtual participant to record a virtual conference. That the use of a virtual participant is not the only way to record a virtual conference does not change the fact that the claims do not recite specific details of how to implement a virtual participant that solve a technical problem.

Moreover, even if Gong's purported solution of using virtual participants for the purpose of recording a videoconference was new, that likewise does not suffice to show that the claims are directed to something more than an abstract idea. Even "a claim for a new abstract idea is still an abstract idea." *Simio*, 983 F.3d at 1364 (*quoting Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016)). Thus, Gong's assertion that its idea "departs from earlier approaches to recording conferences" is not relevant to show that the claims are not abstract. Opp. at 13. That argument improperly conflates novelty with lack of abstraction. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (the search for an inventive concept under § 101 is distinct from demonstrating novelty).

The issue with the claims of the '409 patent is not that they are "results oriented" per se, that they use "present participles," or that Gong did not include "reams of code" in its claims. Opp. at 9, 13, 17-18. Rather, the primary shortcomings of the claims are (1) that they lack detail in reciting a "solution" to the problems Gong identifies, and therefore do not claim "a way of achieving [a result]" *Ericsson*, 955 F.3d at 1328; and (2) the purported "solution" offered by the

claims does not improve the technology of recording virtual conferences.

The only "specific technique" Gong points to for achieving what it labels as the "result" of recording a virtual conference is "using virtual participants that emulate human behavior." Opp. at 7; *see also id*. at 9 (alleging that the "specific technical solution" is using virtual participants to record conferences). Again, that is not a specific technical solution because instead of stating ***how*** to use a virtual participant to emulate human behavior, the claim merely recites a function "in general terms" without claiming the "technical means for performing the functions that are arguably an advance." *Ericsson*, 955 F.3d at 1327 (citation omitted). As noted, Gong has not claimed, much less alleged that it invented, an improved way to "emulate human behavior" using a virtual participant. That dooms the patent at step one.

Although Gong alleges that the specification "extensively details" how virtual participants work, the only thing it points to is "sample code and API calls." Opp. at 9, 15. But even if these unclaimed details were relevant to showing that Gong claimed a specific solution (which they are not), they do not show that the '409 patent is directed to something more than an abstract idea. Gong notably has not argued that this sample code represents a new or innovative way of carrying out some aspect of using a virtual participant to join a virtual conference. Therefore, this code is no different than reciting well-known computer components used to implement an embodiment of a software program. Thus, this purported "technical detail" cannot show that the claims recite a technical solution to a technical problem (or improve computer technology).

Because the claims rely on existing computer technology to carry out the idea of using a virtual participant to record a virtual conference, they are no different from the "do it on a computer" claims which Courts have long held to be abstract. *IBM Corp. v. Zillow Grp., Inc*., No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan. 9, 2024). This principle is the source of the purported "inconsistency" that Gong manufactures between Recall's argument that the "virtual participant" could be replaced with a human, and that the claimed abstract idea is the use of a virtual participant to record a virtual conference. Opp. at 11-12. Recall's argument does not depend on showing that the claims can be performed entirely in the human mind, or on showing that the claims are not "computer-centered." *Id*. Instead, Recall argued that the claims do nothing more than recite "do

what a human does" using a virtual participant and other known computer components. To that end, Recall has consistently asserted that the claims are directed to the abstract idea of recording virtual conferences using a virtual participant. That is not inconsistent with the argument that the "virtual participant" could be replaced with a human interacting with the virtual conferencing platform in the same way. In other words, the virtual participant is simply doing what a human would do using conventional computer tools: joining a virtual conference by interacting with a graphical user interface, and using recording technology to record information streams.

### 3. The '409 patent does not improve computer technology

For similar reasons to those discussed in part A.2, *supra*, Gong has not demonstrated that the claims are directed to a specific improvement in computer functionality. In the context of software patents like the '409 patent, the *Alice* "step-one inquiry determines whether the claims focus on the specific asserted improvement in computer capabilities, or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Recentive Analytics, Inc. v. Fox Corp*, 134 F. 4th 1205, 1212 (Fed. Cir. 2015) (citation omitted). The Federal Circuit, including in the cases Gong relies on, characterizes this test as an examination into whether the "generic components operate in an unconventional manner to achieve an improvement in computer functionality" such that the claims include "something more than the performance of well understood, routine, and conventional activities." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016) (citation omitted).

Gong alleges that the '409 patent is "patent eligible because it addresses 'a problem specifically arising in the realm of computer networks' or computers:' how to effectively record online video conferences." Opp. at 1. But again, it is not enough that the claims may be limited to a specific technical environment. *See supra*. Gong has not demonstrated that the claimed invention causes computer components to operate in an unconventional manner to achieve an improvement in the computational tools used to record virtual conferences. The claims use virtual machines in a way they have previously been used—to emulate human behavior in performing a task previously done by humans. As discussed above, Gong has not purported to invent any new or improved technology applicable to virtual participants. The claims only use known computer technology as

a tool to "perform the conventional steps associated with" recording a virtual conference, and thus do not recite a specific improvement to computer technology. *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 139 F.4th 1332, 1338 (Fed. Cir. 2025) (finding claims directed to the abstract idea of depositing a check where the "claimed steps do not improve the way in which the handheld mobile device functions" and the "device is merely a tool to perform the conventional steps.").

In this respect, the claims of the '409 patent are similar to the claims found ineligible in *GREE, Inc., v. Supercell Oy*, 855 Fed. Appx. 740 (Fed. Cir. 2021). The claims in *GREE* were directed to a "gesture-driven control interface for computer gaming" that allowed users to control a video game via a touch screen. *Id*. at 742. The claimed method for operating a computer game included limitations directed to accepting operation information "via an input face configured to detect a touch operation[.]" *Id*. The Federal Circuit determined that the claims were not directed to an improvement to an interface, because "detecting a touch operation" via a touch interface "is merely the mechanism by which the focus of the invention—the movement-based rules comprised of the remaining steps in the claims—is executed." *Id*. This was made clear by the "wholly generic touch-screen functionality." *Id*. The Court concluded that "using conventional computer activity does not render the claims directed to improvements in computer technology." *Id*. The *GREE* Court distinguished the claims at issue from those in *Core Wireless* (cited by Gong) because the claimed "input face" was not claimed with sufficient detail to demonstrate any improvement in the underlying technology. *Id.* at 742-43. The same is true here. Registering a virtual participant with a virtual conference by emulating human interactions with a GIU "is merely the mechanism by which the focus of the invention—[recording virtual conferences using a virtual participant]—is executed." *Id*. at 742. And because Gong has not alleged that the invention is implemented using anything other than "wholly generic" virtual machine technology, it is clear the claims "recite merely the abstract idea" of using a virtual participant to record a virtual conference. *Id*. at 743.

In the cases Gong cites, by contrast, an important feature of the claims at issue is that they did not "merely recite generalized steps to be performed on a computer using conventional computer activity." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.,* 957 F.3d 1303, 1308-09 (Fed. Cir. 2020) (finding claims to a network communication system improved computer technology because

the claims changed the way networks systems operate, and recited a specific way to solve the problem of reducing delay.). Instead, the claims in these cases recite specific steps that resulted in a solution to a problem with computer technology. For example, the Court in *DDR* found that "the claims at issue here ***specify how*** interactions with the internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014). Gong's attempt to distinguish *Hawk* and *Affinity Labs* because these cases allegedly "did not involve claims to *using* any particular technique to accomplish a result" is inapt and conclusory. Opp. at 8. The claims in *Hawk* and *Affinity* were ineligible for the same reason as the claims of the '409 patent: they do not recite any solution with sufficient specificity to show that the claims amount to more than "a mere implementation of an abstract idea." The claims did not "use" a particular technique to accomplish a result because there was no "particular technique" claimed.

Gong also incorrectly posits that Federal Circuit cases—including *Finjan*, *Core Wireless*, and *Visual Memory*—held claims that did not provide specific details on how to implement an abstract idea to be non-abstract at *Alice* step one. Opp. at 13-14. The Court in *Finjan* explicitly addressed the argument that the claims "do not sufficiently describe how to implement" an abstract idea. The Court found that "the claims recite more than a mere result" because they "recite ***specific steps***—generating a security profile that identifies suspicious code and linking it to a downloadable—that accomplish the desired result." *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018). Likewise, the Court in *Core Wireless* found that the asserted claims were "directed to an improved user interface for computing devices, not to the abstract idea of an index" because the claims "are directed to a ***particular manner*** of summarizing and presenting information in electronic devices." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F. 3d 1356, 1362 (Fed. Cir. 2018). Indeed, the Court found that the claim limitations "disclose a ***specific manner*** of displaying a limited set of information to the user" and thus were not abstract. *Id*. at 1363. And the Court in *Visual Memory* found that the claims "focus on a '***specific asserted improvement*** in computer capabilities'—the use of programmable operational characteristics that are configurable based on the type of processor—instead of 'on a process that qualifies as an abstract idea for which

computers are invoked merely as a tool.'" *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259-1260 (Fed. Cir. 2017) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). The Court in *Amdocs*, and *SRI* came to the same conclusion for similar reasons—both found that the claimed techniques supplied specific details of how to solve a technical problem. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc*., 841 F.3d 1288, 1300-02 (Fed. Cir. 2016) (finding that the limitation at issue was "tied to a specific structure" and "purposefully arranges the components in a distributed architecture to achieve a technological solution to a technological problem specific to computer networks."); *SRI Int'l, Inc. v. Cisco Sys., Inc*., 930 F.3d 1295, 1304 (Fed. Cir. 2019) (finding claims not directed to using a computer as tool because they recite "a *specific technique* for improving computer network security").

In short, only by misreading these cases does Gong arrive at the conclusion that its claims need not "provide specific technical detail as to how to implement the abstract idea of using a virtual participant to record video conferences" to show that the claims improve computer functionality. Opp. at 13. Contrary to Gong's assertion, the case law is clear that to show that the claims are directed to "a specific asserted improvement in computer capabilities", the claims must include "a specific means or method that improves the relevant technology." *AI Visualize, Inc. v. Nuance Commc'ns, Inc*., 97 F.4th 1371, 1378 (Fed. Cir. 2024). Gong has not done that. Gong does not contend that the concept of "recording virtual conferences using virtual participants" is anything other than an abstract idea. And the "automatic" identifying of virtual conferences is not claimed (and, in any event, is not an improvement to technology). The only thing left is "emulating human interactions with a GUI" to allow the virtual participant to join the virtual conference. But that does not improve technology, because that technology already existed. As such, Gong cannot point to any improvement in the technology of recording virtual conferences, because the claims do not add any improved functionality to the way virtual machines operate to record virtual conferences.

**B.     *Alice* Step Two: The Claims Do Not Contain An Inventive Concept**

Gong's analysis at step two of the *Alice* inquiry repeats the errors it makes at step one. The Federal Circuit has explained that an inventive concept can be found in software related patents where "the claims have fundamentally changed or improved how a computer functions." *United*

1  *Servs.*, 139 F.4th at 1339.  Where everything is "operating in a conventional way" there can be no
2  "fundamental change to how any of the technology functions." *Id*.  Here, all of the technology in
3  the claims is operating in a conventional way, and Gong therefore cannot point to an inventive
4  concept that "fundamentally change[s]" how recording virtual conferences functions. *Id*.; *see also*
5  *Two-Way Media*, 874 F.3d at 1339 (nothing in the claims "requires anything other than
6  conventional computer and network components operating according to their ordinary functions").

7        Gong argues that using virtual participants that register with a conferencing system by
8  "emulating human interactions with a graphical user interface" is a "specific technical solution
9  distinct from other recording methods." Opp. at 18.  First, as explained above, there is no "specific
10 technical solution" claimed.  The claims recite the use of a virtual participant that emulates human
11 interactions with a GUI in functional terms, devoid of any detail as to show to achieve that function.
12 And even setting aside the lack of detail, Gong cannot show that the claims "fundamentally changed
13 how a computer functions."  Gong does not allege that the virtual participant technology, or the
14 technology to emulate human interactions is anything but conventional. Instead, all of the claim
15 limitations can be performed using conventional technology, operating in the way it has always
16 operated.  That is, the use of a virtual participant that emulates human behavior to join and record
17 a virtual conference does not fundamentally change "how any of the technology functions, because
18 it is all operating in a conventional way." *United Servs.*, 139 F.4th at 1339.

19       Gong's rhetorical question of "how does the bot get access to the video, audio, and other
20 information from the videoconferencing provider" is illustrative.  Gong contends that the answer
21 to that question is that "the bot emulates human interactions with a graphical user interface" and
22 that the "benefits flow directly from th[at] claimed feature[]." Opp at 19.  But Gong does not point
23 to anything inventive about the use of a virtual participant that emulates human interactions with a
24 graphical user interface, or explain why "benefits flow" from this feature.  That is, Gong has not
25 pointed to "additional features that are more than well-understood, routine, conventional activities"
26 that provide the alleged benefits.  *Intell. Ventures I LLC v. Erie Indem. Co.*, 711 Fed. Appx. 1012,
27 1018 (Fed. Cir. 2017).  The only thing Gong offers is a bare assertion that the '409 patent "includes
28 unconventional algorithms and processes" but provides no citation to such "algorithms and

processes." Opp. at 20. Gong likewise does not allege that the code it cites to in the specification does anything unconventional. But even if it did, at no point does Gong point to any claim language that recites an "unconventional" algorithm or process. *See Ericsson*, 955 F.3d at 1329 ("Even assuming that Ericsson's explanation of the scheme described in the specification is correct, this cannot provide an inventive concept at step two because it is not [claimed]); *ChargePoint*, 920 F.3d at 769-70 (holding claims ineligible because even if the specification had provided "a technical explanation of how to enable communication over a network for device interaction" the claim language did "not require those details"). In short, there is no inventive technology underlying Gong's use of a bot that emulates human interactions with a GUI that fundamentally changes how computers operate. Instead, the claims simply apply an abstract idea of using a virtual participant to record a virtual conference, implemented using conventional computational techniques. *United Servs.*, 139 F.4th at 1340. Thus, "there is no fundamental change to how any of the technology functions, because it is all operating in a conventional way." *Id*.

Recall's arguments do not depend on claim construction. Gong does not specify what the "claim construction that [Recall] has not yet won" is. Opp. at 19-20. But assuming Gong is again arguing that Recall has construed certain claim limitations "into nonexistence," that is a meritless accusation. *Id*. at 11. Recall has never argued that any limitation should be read out of the claims. It simply explained that the claim limitations that Gong points to do not actually include the features that Gong relies on to show that the claims contain an inventive concept.

### C. Claim 1 Is Representative Of Unasserted Dependent Claims 2-12

When Recall filed its motion, it did not anticipate that Gong would assert claims 13-23 because there is no basis to allege that Recall infringes those claims.[2] This motion therefore only addresses the invalidity of claims 2-12 under §101, without prejudice to Recall filing a subsequent motion addressing other claims. With respect to claims 2-12, Gong only addresses claims 2 and 11. Gong simply asserts that these claims add technical detail. But, like claim 1, this "additional technical detail" is nothing more than a functional recitation of an idea implemented using generic computer tools and therefore likewise fails to show that the claims are nonabstract.

---

[2] Recall doesn't "detect[] substandard execution of one of the virtual machines according to a predefined standard" or "terminat[e]" that virtual machine and launch a replacement.

Dated: August 18, 2025

MORRISON & FOERSTER LLP

By: */s/ Timothy Chen Saulsbury*
 Timothy Chen Saulsbury

*Attorney for Defendant*
HYPERDOC INC. D/B/A RECALL.AI