1
2
3
4                      UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6
7    GONG.IO, INC.,                        Case No. 25-cv-01026-NW
8                 Plaintiff,
                                           **ORDER GRANTING MOTION TO**
9         v.                               **DISMISS WITH LEAVE TO AMEND**
10   HYPERDOC, INC.,                       Re: ECF No. 39
11                Defendant.
12
13        Plaintiff Gong.io, Inc. ("Gong") sued Defendant Hyperdoc, Inc. d/b/a Recall.ai ("Recall")

14   for patent infringement.  On July 23, 2025, Recall filed a motion to dismiss Gong's amended

15   complaint.  ECF No. 39.  Having considered the parties' briefs, oral arguments, and the relevant

16   legal authority, the Court GRANTS the motion to dismiss with leave to amend.

17   **I.    BACKGROUND**

18        Patent No. 9,699,409 ("the '409 patent") issued on July 4, 2017.  First Amend. Compl. ¶

19   12 ("FAC"), ECF No. 35.  "Gong is the owner of all right, title, and interest in and to the '409

20   patent."  *Id.* ¶ 13.

21        As alleged, the '409 patent describes "systems and methods for recording web conferences,

22   specifically for capturing audio, video, and screen-sharing content during virtual meetings."  *Id.* ¶

23   15.  The '409 patent recognizes the "need to document virtual meetings."  '409 pat., 1:35, ECF

24   No. 35-1.  The specification discloses how through the invention, "virtual meetings can be

25   unobtrusively recorded, transparently to the participants."  *Id.* at 1:45-46.  Claim 1 encompasses:

26        1. A method of conference recording, comprising the steps of:

27             identifying a plurality of virtual conferences being operated by a
               conferencing system connected to a communications network, the
28             virtual conferences having human participants;

United States District Court
Northern District of California

> executing a plurality of virtual participant processes in a processor;
>
> registering the virtual participant processes with the conferencing system as co-participants in the virtual conferences by emulating human interactions with a graphical user interface; and
>
> recording information streams of the human participants using the virtual participant processes.

*Id.,* cl. 1.

Gong filed suit on January 31, 2025, alleging "Recall.ai markets and sells technology whose use to record online web conferences infringes one or more claims of the '409 patent." Compl. ¶ 4, ECF No. 1. Specifically, Gong alleges "Recall.ai has written a tutorial explaining that 'Gong's recording bot is a signature part of their product,' and instructing users on how to 'replicate Gong's recording bot with Recall.ai.'" *Id.* ¶ 7.

On June 16, 2025, Recall moved to dismiss the complaint on the ground that the '409 patent is ineligible for patent protection under 25 U.S.C. § 101. Mot. to Dismiss, ECF No. 33. In response, Gong filed an amended complaint. *See* FAC. On July 23, 2025, Recall filed a renewed motion to dismiss on the same grounds. Mot. to Dismiss ("Mot."), ECF No. 35. Gong opposed, and Recall filed a reply. Opp'n, ECF No. 43; Reply, ECF No. 47. The Court heard oral argument on October 1, 2025.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the [plaintiff]." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

United States District Court
Northern District of California

1    be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)

2    (citations and internal quotation marks omitted).

3        **B.    Section 101 Patent Eligibility**

4        Patent eligibility "is a question of law, based on underlying facts" that "may be, and

5    frequently has been, resolved on a Rule 12(b)(6) . . . motion." *SAP Am., Inc. v. InvestPic, LLC*,

6    898 F.3d 1161, 1166 (Fed. Cir. 2018).  Dismissal is appropriate "where the undisputed facts,

7    considered under the standards required by [Rule 12(b)(6)], require a holding of ineligibility under

8    the substantive standards of law." *Id.*  Courts in this district have regularly granted motions to

9    dismiss under such circumstances.  *LookSmart Grp., Inc. v. Google, LLC*, No. 24-CV-07147-JST,

10    2025 WL 1785343 (N.D. Cal. June 26, 2025); *LaVoult.com, LLC v. Meta Platforms, Inc.*, 777 F.

11    Supp. 3d 1072 (N.D. Cal. 2025).

12        Section 101 "defines the subject matter that may be patented."  *Bilski v. Kappos*, 561 U.S.

13    593, 601 (2010).  Under Section 101, patentable subject matter includes "any new and useful

14    process, machine, manufacture, or composition of matter, or any new and useful improvement

15    thereof." 35 U.S.C. § 101.  "These categories are broad, but they are not limitless." *Twilio, Inc. v.

16    *Telesign Corp.*, 249 F. Supp. 3d 1123, 1136 (N.D. Cal. 2017).  "Laws of nature, natural

17    phenomena, and abstract ideas are not patentable," *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S.

18    208, 216 (2014), because "they are the basic tools of scientific and technological work," which are

19    "free to all . . . and reserved exclusively to none."  *Mayo Collaborative Servs. v. Prometheus*

20    *Labs., Inc.*, 566 U.S. 66, 70 (2012) (cleaned up).  Allowing patent claims for such purported

21    inventions "might tend to impede innovation more than it would promote it."  *Id.*

22        But courts must "tread carefully in construing this exclusionary principle lest it swallow all

23    of patent law." *Alice Corp.*, 573 U.S. at 217.  "At some level, all inventions embody, use, reflect,

24    rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (cleaned up).  So, "in

25    applying the § 101 exception, [the Court] must distinguish between patents that claim the

26    'building blocks' of human ingenuity and those that integrate the building blocks into something

27    more, thereby 'transforming' them into a patent-eligible invention."  *Id.* (cleaned up).

28        To draw this distinction, the Court engages in a two-step "*Alice*" analysis.  First, the Court

United States District Court
Northern District of California

3

1    "determine[s] whether the claims at issue are directed to a patent-ineligible concept." *Id.* at 218.

2    If so, the Court then assesses "whether the elements of each claim, both individually and as an

3    ordered combination[,] . . . transform the nature of the claim into a patent eligible application." *Id.*

4    at 217 (cleaned up). This second step of the analysis is "a search for an inventive concept—i.e., an

5    element or combination of elements that is sufficient to ensure that the patent in practice amounts

6    to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up).

7    **III.    DISCUSSION**

8        **A.    *Alice* Step One**

9        The Court begins with step one of the two-step *Alice* patent eligibility inquiry, which asks

10   whether the claim is directed to a patent-ineligible abstract idea. At this step, courts consider

11   "what the patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v.*

12   *Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020).

13           **1.    The "directed to" inquiry**

14       At *Alice* step one, the court evaluates "the focus of the claimed advance over the prior art

15   to determine if the character of the claim as a whole, considered in light of the specification, is

16   directed to [an abstract idea]." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed.

17   Cir. 2019) (citation modified). Finding a claim's "focus" requires a delicate balancing act. While

18   the process necessarily requires some high-level description, the Court must articulate "what the

19   claims are directed to" with "enough specificity to ensure the step one inquiry is meaningful."

20   *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017); *see also Enfish, LLC*

21   *v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at such a high

22   level of abstraction and untethered from the language of the claims all but ensures that the

23   exceptions to § 101 swallow the rule.").

24       The '409 patent "relates to arrangements for multi-party conferencing." '409 pat. at 1:24-

25   25. More particularly, the patent "relates to documentation of virtual conferences over data

26   networks." *Id.* at 1:25-26. The claimed invention purports to improve upon prior systems for

27   managing virtual meetings by allowing "virtual meetings [to] be unintrusively recorded,

28   transparently to the participants." *Id.* at 1:45-46.

United States District Court
Northern District of California

1    Recall argues that claim 1 of the '409 patent "is directed to the abstract idea of recording

2    virtual conferences using virtual participants." Mot. at 9.[1]  Recall asserts that "the claim recites

3    general steps a computer program or bot can take to join a video conference as a participant and

4    record it." *Id.*  Recall contends that all the steps "mirror those a human would take to join and

5    record a videoconference" and the claims lacks "technical detail as to how [the] steps are

6    accomplished." *Id.*

7    Gong construes Recall's argument as improperly claiming a result and asserts that Recall's

8    characterization "is incomplete and does not account for all features of the claims." Opp'n at 11.

9    Gong argues that the '409 patent "does not claim all ways of recording virtual conferences—only

10   the specific technique of using virtual participants that emulate human behavior." *Id.* at 12.

11   The Court agrees with Gong that the focus is on the claim language. *Trinity Info Media,*

12   *LLC v. Covalent, Inc.*, 72 F.4th 1355, 1363 (Fed. Cir. 2023).  Considering claim 1's language,

13   claim 1 is directed to a conference recording system that works within a virtual conferencing

14   system on a network, creates a virtual participant in a processor, registers the virtual participant

15   with the virtual conferencing system as co-participants by emulating human interactions, and

16   records the conference using the virtual participant.

17                    **2.      The "abstract idea" inquiry**

18   Next, the Court determines whether this focus is an abstract idea.  "Neither the U.S.

19   Supreme Court nor the Federal Circuit has set forth a bright line test separating abstract ideas from

20   concepts that are sufficiently concrete so as to require no further inquiry under the first step of the

21   *Alice* framework." *Twilio*, 249 F. Supp. 3d at 1138 (citing *Alice*, 573 U.S. at 221).  That a claim is

22   directed to "mental processes that can be performed in the human mind or using a pencil and

23   paper" is a sign of abstraction. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed.

24   Cir. 2021) (cleaned up).  Likewise, "[a] claimed method's similarity to fundamental . . . practices

25   long prevalent is yet another clue that the claims may be abstract and unpatentable." *Beteiro, LLC*

26   *v. DraftKings Inc.*, 104 F.4th 1350, 1356 (Fed. Cir. 2024) (cleaned up).  To determine whether a

27

28   _____
     [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

claim's focus is an abstract idea, courts also "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334.

Claim 1 of the '409 patent is directed to an abstract idea. The claimed method comprises four steps for "conference recording." '409 pat., cl. 1. Without construing the claims, the steps include (1) identifying virtual conferences with human participants within a conferencing system connected to a communications network; (2) executing several virtual participant processes in a processor; (3) registering these virtual participant processes with the conferencing system as co-participants in the virtual conferences by emulating human interactions with a graphical user interface; and (4) recording the conference using the virtual participant processes. *Id.* Notably claim 1 does not specify *how* virtual conferences within a conferencing system are identified or how virtual participant processes are registered with the conferencing system as co-participants or how virtual participant processes emulate human behavior. At no point does claim 1 clarify what it means to "execute a plurality of virtual participant processes" or "emulate[e] human interactions with a graphical user interface." *Id.* Claim 1 does nothing more than recite "a desired function or outcome without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also LookSmart Grp., Inc. v. Google, LLC*, 2025 WL 1785343, *4 (finding claims directed to the abstract idea of "collecting, storing, indexing, and ranking" information patent-ineligible for lack of specificity); *LaVoult.com, LLC v. Meta Platforms, Inc.*, 777 F. Supp. 3d 1072, 1080 (finding claims that toggle between two modes of communication and automatically delete messages in one mode did not "improve the functioning of a computer").

"Allowing a claim that functionally describes a mere concept without disclosing how to implement that concept risks defeating the very purpose of the patent system." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1213 (Fed. Cir. 2025). "[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998). This has been a feature of federal patent law since inception; the system must strike a "balance between the interest in motivating innovation and enlightenment by rewarding invention with patent

protection on the one hand, and the interest in avoiding monopolies that unnecessarily stifle competition on the other." *Id.*

Gong argues that the '409 patent does not claim a result but instead is directed to a result ("recording virtual conferences") and a means to achieve that result ("using virtual participants"). Opp'n at 12.  Gong's argument misses the mark.  What claim 1 of the '409 patent lacks is "limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs*, 838 F.3d at 1269.  Instead of disclosing "a specific implementation of a solution to a problem in the software arts," *Enfish*, 822 F.3d at 1339, or "a specific means or method that solves a problem in an existing technological process," *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019), the only thing claim 1 of the '409 patent discloses is the use of a virtual participant or bot within a virtual conference environment.

To be patentable, claims must be specific enough to transform "a claim from one claiming only a result to one claiming a way of achieving it." *SAP*, 898 F.3d at 1167.  Here, claim 1 of the '409 patent lacks that specificity.  It does not "focus on an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id.* at 1168 (citation modified).

While there might be a myriad of ways to record virtual conferences, including via a computer, claim 1 does not delineate the specific way its conference recording method (using a bot) solves an identified problem.  Gong argues that its complaint alleges many other ways to record virtual conferences, "from using screen capture software to pointing an iPhone at the screen" and that the '409 patent "claims a specific technical solution, using virtual participants (bots), to record conferences rather than screen recorders, cameras, and other previously-used kludges."  Opp'n 13-14.  Here, claim 1's only description of how to use a "bot" to record a conference is to "execut[e] a plurality of virtual participant processes in a processer" and "record[] information . . . using the virtual participant processes." '409 pat., cl. 1.  But the claim does not describe, in any manner, how the result of "recording information" is achieved "using the virtual participant processes." *Id.*  Claim 1 "fails to recite a practical way of applying an underlying idea"—the idea of recording virtual conferences by bot—and is "drafted in such a result-oriented

7

1  way that it amounts to encompassing the principle in the abstract no matter how implemented."

2  *Free Stream Media Corp. v. Alphonso Inc.*, No. 2019-1506, 2021 WL 1880931, *1363 (Fed. Cir.

3  May 11, 2021) (citation modified).

4        Next Gong argues that claim 1 of the '409 patent is not directed to an abstract idea because

5  it solves a problem existing in prior systems. Opp'n at 14. "[T]he complaint makes clear that one

6  problem with prior systems for recording conferences is that 'users had to remember to start the

7  screen recorder every time.'" *Id.* (quoting FAC ¶ 25). Gong asserts that the patented method

8  "solves this problem by having the inventive system (rather than a human) 'identify[]' the virtual

9  conferences to be recorded, thus 'integrating recording into the participants' workflow.'" *Id.* at

10  14-15 (quoting FAC ¶ 34).

11        Gong's argument fails. "The analysis at step one 'must focus on' the claim language."

12  *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) (citation

13  omitted). Here, claim 1 does not disclose "identify[ing] the virtual conferences to be recorded,"

14  Opp'n at 14-15, but instead discloses "identifying a plurality of virtual conferences being operated

15  by a conferencing system connected to a communications network, the virtual conferences having

16  human participants." '409 pat., cl. 1. In other words, claim 1 does not identify specific virtual

17  conferences—the ones to be recorded—but all virtual conferences "operated by a conferencing

18  system connected to a communications network" that include humans. *Id.* Nor does claim 1

19  describe how the alleged goal of "integrating recording into the participants' workflow," Opp'n at

20  14-15 (quoting FAC ¶ 34), is achieved by "identifying a plurality of virtual conferences being

21  operated by a conferencing system connected to a communications network." '409 pat., cl. 1.

22        Gong also argues that the limitation requiring "registering the virtual participant processes

23  with the conferencing system as co-participants in the virtual conferences by emulating human

24  interactions with a graphical user interface" saves claim 1 from abstraction.[2]  Opp'n at 15.

25

26  _____

27  [2] Gong asserts that this "limitation excludes, among other things, recording systems with a virtual
   participant that is implemented as a component of the videoconferencing system itself." Opp'n at
   15 (citing FAC ¶ 36). However, as is evident in Gong's citation to its complaint, nothing in the
28  claims provides for such an exclusion. At this stage the claims, as informed by the specification,
   control. *Trinity Info Media, LLC*, 72 F.4th at 1363.

United States District Court
Northern District of California

1    However, this limitation is nothing more than a "generalized step[]to be performed on a computer

2    using conventional computer activity." *Enfish*, 822 F.3d at 1338.  This limitation merely recites

3    the use of existing technology to register a bot within a conferencing system.

4            Further, the "registering" limitation "simply recites using a computer to automate what was

5    previously done by humans."  Mot. at 13.   As Recall notes, a human can "register[] for a virtual

6    conference by interacting with a graphical user interface."  *Id.*

7            A longstanding practice that "can be and has been performed by humans without the use of

8    a computer . . . is an abstract idea." *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F.

9    App'x 520, 526 (Fed. Cir. 2021) (finding abstract the idea of "information exchange in an online

10   loan application process which can easily be performed by a human").  Where a practice has a

11   brick-and-mortar analog or can be performed by humans with a pen and paper, the idea also may

12   be abstract under Section 101.  *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317

13   (Fed. Cir. 2016) (analogizing an email processing software program to a "brick and mortar" post

14   office or corporate mailroom.); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147

15   (Fed. Cir. 2016) (claims for translating a functional description of a logic circuit into a hardware

16   component description of the logic circuit were invalid because they "can be performed mentally

17   or with pencil and paper").  Claimed methods are not rendered patent eligible simply because

18   "they perform a task previously undertaken by humans with greater speed and efficiency than

19   could previously be achieved." *Recentive Analytics, Inc.*, 134 F.4th at 1214.

20           Here, claim 1 of the '409 patent mimics what humans do to record a virtual conference,

21   with the added feature of conducting the entire exercise using a bot.  The functions of identifying a

22   plurality of virtual conferences within a conferencing system, registering within that conferencing

23   system, and then recording information streams, are all tasks that can be manually performed by a

24   human being.  Claim 1 even requires that the bot "emulate[e] human interactions" to register the

25   bot within the conferencing system.  '409 pat., cl. 1.

26           The step of "executing a plurality of virtual participant processes" constitutes the core of

27   the conference recording system, but Gong makes no claim concerning this operation other than in

28   claim 2 where "executing a plurality of virtual participant processes comprises "spawning a virtual

United States District Court<br>Northern District of California

9

machine in the processor and executing the virtual participant processes in the virtual machine."
This too is results-oriented. Claim 1 of the '409 patent does not disclose any technical
improvement to *how* computers are used but instead focuses on an abstract idea using a computer
as a tool. *SAP*, 898 F.3d at 1168.

In responding to Recall's argument about human activity, Gong again emphasizes how
"previous techniques for recording virtual meetings faced technical and privacy concerns that do
not occur in an in-person meeting, from failure to capture all participants' audio, to participants
being recorded without their consent, to private portions of the screen being captured." Opp'n at
17. But again, it is unclear how the '409 patent provided a technical solution to these problems,
over and above a human pressing "record" within a virtual conference.

In this way, claim 1 of the '409 patent is like the claims at issue in *Hawk Tech. Sys., LLC v.
Castle Retail, LLC*. 60 F.4th at 1357. There, the Federal Circuit found patent claims "directed to
a method of receiving, displaying, converting, storing, and transmitting digital video" patent-
ineligible. *Id.* In addition to "using result-based functional language," the claims at issue did not
disclose performing a specific implementation of digitizing and converting data nor did they
describe how to achieve the alleged goal of "conserving bandwidth while preserving data." *Id.*
Further, like claim 1 of the '409 patent, the claims at issue in *Hawk Tech. Sys., LLC* failed to
"explain what the claimed parameters are or how they should be manipulated." *Id.* (citation
modified).

Drawing all reasonable inferences in Gong's favor, claim 1 of the '409 patent fails *Alice*
step 1 as a matter of law because it is directed to an abstract idea.

## B.    *Alice* Step Two

Because claim 1 of the '409 patent is directed to an abstract idea, the Court proceeds to
step two of the *Alice* inquiry. Step two of the *Alice* inquiry asks "whether the claimed elements—
'individually and as an ordered combination'—recite an inventive concept." *Cellspin Soft, Inc. v.
Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217). "An inventive
concept reflects something more than the application of an abstract idea using 'well-understood,
routine, and conventional activities previously known to the industry.'" *Id.* Such a concept "must

United States District Court
Northern District of California

10

1    be significantly more than the abstract idea itself, and cannot simply be an instruction to

2    implement or apply the abstract idea on a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T*

3    *Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016); *see also Savvy Dog Sys., LLC v.*

4    *Pennsylvania Coin, LLC,* No. 2023-1073, 2024 WL 1208980, at *3 (Fed. Cir. Mar. 21, 2024)

5    (determining that alleged inventive steps "are abstract ideas themselves—whether viewed as part

6    of a set of rules for playing a game or part of a game previewed to the player before committing to

7    playing—and thus cannot be an inventive concept under *Alice* step two.").

8        Here, there is no inventive concept transforming claim 1's abstract idea into a patent-

9    eligible application.  Just as the claim fails to elaborate on specific improvements to computer

10   capabilities at *Alice* step 1, claim 1 of the '409 patent fails as a matter of law at *Alice* step 2 for the

11   same reasons.  *See Enfish*, 822 F.3d at 1339 (explaining the step 1 and step 2 inquiries can blend

12   when software patents are at issue).

13       Gong's counter arguments are unavailing.  First, Gong contends Recall misconstrues the

14   "identifying a plurality of virtual conferences" element, stating "[t]his automated identification

15   solves the problem of missed recordings."  Opp'n at 23.  Yet the language of claim 1 does not

16   indicate how the claimed step of the "identifying a plurality of virtual conferences" is automated,

17   much less solve the problem of missed recordings.

18       Second, Gong argues that the requirement that "virtual participants register by 'emulating

19   human interactions with a graphical user interface' . . . is a specific technical solution distinct from

20   other recording methods."  *Id*. (quoting '409 pat., cl. 1).  As stated above, this element does not

21   supply a specific technical solution, nor is it "significantly more than the abstract idea itself."

22   *Bascom Glob. Internet Servs., Inc.*, 827 F.3d at 1349.   Rather it is merely "an instruction to

23   implement or apply the abstract idea on a computer."  *Id.*

24       Nothing in the complaint or specification supports a plausible inference that claim 1 of the

25   '409 patent improves computer functionality.  Viewing the facts in the light most favorable to

26   Gong, claim 1 fails to provide an inventive concept.[3]

27   _____

28   [3] Gong argues that Recall's inventive concept "argument depends on a claim construction it has

United States District Court
Northern District of California

1    **C.    Representative Claim**

2        The Court need not individually analyze every claim under the *Alice* rubric if certain

3    claims are "representative."  *Twilio*, 249 F. Supp. 3d at 1141 (citing *Alice*, 573 U.S. at 224).

4    "Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at

5    issue are 'substantially similar and linked to the same' ineligible concept."  *Mobile Acuity Ltd. v.*

6    *Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (quoting *Cleveland Clinic Found. v. True*

7    *Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) and citing *Content Extraction &*

8    *Transmission LLC v. Wells Fargo Bank, N.A.,* 776 F.3d 1343, 1348 (Fed. Cir. 2014)).  Therefore,

9    a court "may treat a claim as representative in certain situations, such as if the patentee does not

10   present any meaningful argument for the distinctive significance of any claim limitations not

11   found in the representative claim."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

12   Additionally, "[a] claim is not representative simply because it is an independent claim."  *Id.*

13       Here, Gong advanced meaningful arguments regarding limitations found only in the

14   independent claims.  For example, Gong contends that dependent claims 2 and 11 supply "specific

15   technical detail" that save them from abstraction.  Opp'n at 26.  In particular, Gong argues that

16   "claim 2 specifies that—'executing a plurality of virtual participant processes'—requires

17   'spawning a virtual machine in the processor and executing the virtual participant processes in the

18   virtual machine.'"  *Id.* (quoting '409 pat., cl. 2).  Gong also notes that "claim 11 details that

19   registration occurs 'by modifying at least one of a registry entry, a configuration file, and an

20   internal database in the conferencing system.'"  *Id.* (quoting '409 pat., cl. 11).

21       Recall counters that claims 2 through 12 depend from claim 1 and "are directed to the same

22   abstract concept—recording virtual conferences with virtual participants."  Reply at 26.  The

23   Court agrees with Recall.

24       Claims 2 through 12 recite further functional limitations about executing virtual participant

25   processes and registering the virtual participant processes that are abstract for all the same reasons

26   _____

27   not yet won."  Opp'n at 24.  However, the "patentee must do more than invoke a generic need for
     claim construction or discovery to avoid grant of a motion to dismiss under § 101."  *Trinity Info*

28   *Media, LLC.*, 72 F.4th at 1360.

United States District Court
Northern District of California

as claim 1.  Accordingly, the Court treats claim 1 as representative.

### D.      Leave to Amend

Because only Gong only asserted representative claim 1 of the '409 patent, Recall requests Gong's complaint be dismissed with prejudice.  Mot. at 27.  Gong requests leave stating that its case can proceed on unchallenged claims 13-23.  Opp'n at 25.  The Court grants Gong an opportunity to file an amended complaint.

## IV.      CONCLUSION

For the foregoing reasons, Recall's motion to dismiss is granted with leave to amend.  Any amended complaint must be filed within 21 days of this order.

**IT IS SO ORDERED.**

Dated: October 10, 2025

Noël Wise
United States District Judge